PRESENT:  All the Justices

WAYNE THOMPSON
                                        OPINION BY
v.   Record No. 080445        JUSTICE CYNTHIA D. KINSER
                                   February 27, 2009
COMMONWEALTH OF VIRGINIA

          FROM THE COURT OF APPEALS OF VIRGINIA


     The appellant, Wayne Thompson, was convicted in a bench

trial in the Circuit Court of Arlington County of violating Code

§ 18.2-308.2(A) by carrying concealed about his person, as a

convicted felon, what is generally known as a "butterfly knife."

The dispositive issue on appeal is whether the evidence was

sufficient to establish that Thompson's butterfly knife is a

"weapon of like kind" to those weapons enumerated in Code

§ 18.2-308(A).  We conclude the evidence was not sufficient and

will therefore reverse the judgment of the Court of Appeals

affirming Thompson's conviction.

               RELEVANT FACTS AND PROCEEDINGS

     In accordance with established principles of appellate

review, we state the facts adduced at trial in the light most

favorable to the Commonwealth as the prevailing party in the

trial court.  Riner v. Commonwealth, 268 Va. 296, 303, 601

S.E.2d 555, 558 (2004); Armstrong v. Commonwealth, 263 Va. 573,

576, 562 S.E.2d 139, 140 (2002).  We also accord the

Commonwealth the benefit of all reasonable inferences drawn from

the evidence.  Riner, 268 Va. at 303, 601 S.E.2d at 558;
Armstrong, 263 Va. at 576, 562 S.E.2d at 140.

On August 20, 2004, Officer Curtis Blake of the Arlington County Police Department's Tactical Unit was patrolling in the 2400 block of South Shirlington Road, an area where Officer Blake had made multiple arrests for narcotics and weapons offenses.  While on patrol, Officer Blake observed Thompson "just hanging around" and subsequently get into a white cargo van.  Officer Blake informed other officers in the tactical unit about Thompson and the white van because Officer Blake suspected that Thompson might be relocating to a different area of the neighborhood to use drugs.

The tactical unit officers began surveillance on the van as it traveled to and parked at a location about four blocks from where Officer Blake had first observed it.  Another officer, Greg Johnson, then watched three men exit the van and congregate "in close proximity to one another."  Thompson and one of the other men "appeared to be looking continuously in different directions."  Officer Johnson described their actions "as if something was going on they didn't want people to see."  The third man bent over, ignited a lighter, and started to smoke what Officer Johnson believed was crack cocaine.  Because Officer Johnson thought illegal narcotics were being ingested,

he notified the other officers of his observations, and they converged on the three men.

As the officers began to move toward the van, the man who had been smoking the suspected crack cocaine fled, but Officer Johnson apprehended him a short distance away. Officer Blake apprehended one of the other men.

A third officer with the tactical unit, David W. Giroux, approached Thompson. According to Officer Giroux, Thompson was peering around the back of the white van and trying to avoid detection. Officer Giroux identified himself as a police officer and asked Thompson to show his hands. As Officer Giroux advanced toward Thompson, he could not see Thompson's left hand. Consequently, Officer Giroux immediately handcuffed Thompson and "patted him down." During the frisk for weapons, Officer Giroux felt "a long, flat, hard object" in the left front pocket of Thompson's pants. Officer Giroux retrieved the object from Thompson's pocket and found that it was a "folding butterfly-style knife."[1]

Officer Giroux described the butterfly knife as

a knife that basically almost – for lack of a better term, folds up upon itself. It's got a split handle, a two-part handle. When it's open, the blade is exposed.

This particular one has a sharp edge and then what we call a safe edge, a blunt edge. Some of them

---

[1] A butterfly knife is also known as a balisong.

3

have a double-sided edge.  In its closed position, there's a latch on the bottom of the handle that goes across and secures the knife so that if it's in your pocket, it doesn't open up and cut your leg or your chest or whatever pocket it's in.

To use it, you would remove the latch, you would flip it open like this (demonstrating) and then you twist it.  So it's designed for a one-handed operation with a flip of the wrist.

Officer Giroux also testified that the handle measures four and three-quarters inches in length and the blade measures four inches in length.

At trial, Officer Giroux explained, "edge weapons are very dangerous for police officers, due to the fact that they are easily concealed, and specifically ones like [Thompson's] that only require one hand to operate are very dangerous."  On cross-examination, Officer Giroux testified he has seen "this exact type of knife" retrieved from gang members on several occasions.  He admitted, however, that a butterfly knife may have uses other than as a weapon and can be used "[j]ust like a butter knife."

Thompson testified that he had not only the butterfly knife, but also a pair of channel-lock pliers on his person when Officer Giroux frisked him.  Thompson claimed he had used both items earlier that day in his work as an auto mechanic.  Officer Giroux, however, did not recall a pair of pliers on Thompson's person when he conducted the weapons frisk.

4

In an amended indictment, Thompson was charged with "knowingly and intentionally carry[ing] about his person, hidden from common observation a dirk, bowie knife, switchblade knife, ballistic knife, or machete or razor or any weapon of like kind, after having been previously convicted of a felony," in violation of Code § 18.2-308.2(A).  The case proceeded to a bench trial.[2]  At the close of the Commonwealth's evidence, Thompson moved to strike the evidence based on the decision in Delcid v. Commonwealth, 32 Va. App. 14, 526 S.E.2d 273 (2000). Thompson argued the Commonwealth failed to prove the butterfly knife was one of the weapons enumerated in Code § 18.2-308(A) and it was not a weapon of like kind because the Commonwealth did not establish that Thompson intended to use the butterfly knife as a weapon.  The trial court denied Thompson's motion to strike.

At the close of the trial, Thompson renewed his motion to strike the evidence.  The trial court denied the motion, finding that the butterfly knife "looks like a weapon, it's the identical – virtually, the identical butterfly knife described

---

[2] In a pretrial motion, Thompson moved to suppress the butterfly knife, arguing that the tactical unit officers did not have reasonable articulable suspicion that Thompson was engaged in criminal activity and was armed and dangerous.  Thus, according to Thompson, the "stop and frisk" violated the Fourth Amendment.  The trial court denied Thompson's motion to suppress.

in Delcid."  That fact coupled with the circumstances surrounding the discovery of the butterfly knife convinced the court to find Thompson guilty of violating Code § 18.2-308.2(A).

Thompson appealed his conviction to the Court of Appeals of Virginia.  In a published opinion, the Court of Appeals affirmed the trial court's judgment.  Thompson v. Commonwealth, 51 Va. App. 205, 224, 656 S.E.2d 409, 418 (2008).  Among other things, Thompson claimed the evidence was insufficient to sustain his conviction.[3]  The Court of Appeals, utilizing the analytical framework established in Farrakhan v. Commonwealth, 273 Va. 177, 639 S.E.2d 227 (2007), first concluded the butterfly knife is not one of the weapons enumerated in Code § 18.2-308(A). Thompson, 51 Va. App. at 220, 656 S.E.2d at 416.  The Court of Appeals then determined the butterfly knife is, however, a " 'weapon' within the meaning of Code § 18.2-308.2."  Id. at 222, 656 S.E.2d at 417.  In the final step of the analysis, the Court of Appeals held that the physical characteristics of the

_____

[3] Thompson also asserted the trial court erred in denying his motion to suppress.  The Court of Appeals found "the totality of the circumstances supported [Officer] Giroux's belief that [Thompson] had engaged, or was about to engage, in criminal activity."  Thompson, 51 Va. App. at 215-16, 656 S.E.2d at 414.  The Court of Appeals further concluded that Officer "Giroux's objectively reasonable apprehension that [Thompson] might pose a danger to the police made the officer's use of handcuffs a reasonable measure of protection" and the frisk for weapons was justified by the officer's reasonable belief that Thompson might be armed and dangerous.  Id. at 217, 656 S.E.2d at 414-15.

butterfly knife support the "trial court's conclusion that [Thompson's] knife, which closely resembled the knife in Delcid, was a 'weapon of like kind' to a 'dirk.' " Id. at 223-24, 656 S.E.2d at 418.

Now, on appeal to this Court, the dispositive issue raised by Thompson is whether the Court of Appeals erred in holding the evidence sufficient to prove the butterfly knife "is a weapon described in Code § 18.2-308(A)."[4]

ANALYSIS

Under the provisions of Code § 18.2-308.2(A), it is unlawful for any person who has been convicted of a felony "to knowingly and intentionally carry about his person, hidden from common observation, any weapon described in subsection A of [Code] § 18.2-308."  As relevant to the butterfly knife at issue in this appeal, the weapons listed in Code § 18.2-308(A) include "any dirk, bowie knife, switchblade knife, ballistic knife, machete, razor, slingshot, spring stick, metal knucks, or blackjack; . . . or . . . any weapon of like kind as those enumerated in this subsection."

To convict Thompson of violating Code § 18.2-308.2(A), the Commonwealth had to prove, among other things, that the

_____

[4] Thompson also contends the Court of Appeals erred in affirming the trial court's denial of his motion to suppress. Since the question regarding the sufficiency of the evidence is dispositive, we will not address that assignment of error.

butterfly knife found in his pocket is one of the specifically proscribed items or a "weapon of like kind." Code § 18.2-308(A); see also Farrakhan, 273 Va. at 182, 639 S.E.2d at 230. " 'It is elementary that the burden is on the Commonwealth to prove every essential element of the offense beyond a reasonable doubt.' " Bishop v. Commonwealth, 275 Va. 9, 12, 654 S.E.2d 906, 908 (2008) (quoting Powers v. Commonwealth, 211 Va. 386, 388, 177 S.E.2d 628, 629 (1970)). "When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008) (citations omitted). The construction of a statute, however, is a question of law reviewed de novo on appeal. Farrakhan, 273 Va. at 180, 639 S.E.2d at 229.

In accordance with the analytical framework established in Farrakhan, 273 Va. at 182, 639 S.E.2d at 230, we first conclude the evidence in this record does not show that Thompson's butterfly knife is one of the weapons listed in Code § 18.2-308(A).[5] Nor does the Commonwealth claim otherwise. Therefore,

---

[5] A "dirk" is "'a long straight-bladed dagger' " or " 'a short sword.' " Wood v. Henry County Public Schools, 255 Va. 85, 95 n.6, 495 S.E.2d 225, 261 n.6 (1998) (quoting Webster's Third New International Dictionary 642 (1981)). A "bowie knife" is " 'a large hunting knife adapted [especially] for knife-fighting' " with a "'10 to 15 inch[] long'" blade. Id.

8

we must next consider whether Thompson's butterfly knife is a "weapon," by determining whether the evidence demonstrates that it is "designed for fighting purposes" or "commonly understood to be a 'weapon.' " Farrakhan, 273 Va. at 182, 639 S.E.2d at 230; accord Harris v. Commonwealth, 274 Va. 409, 415, 650 S.E.2d 89, 92 (2007).

With regard to that question, Thompson argues the trial court made no finding that the butterfly knife is "designed for fighting purposes" or is "commonly understood to be a weapon."[6] In fact, Thompson claims the only evidence presented at trial as to whether his butterfly knife is a weapon was Officer Giroux's testimony that the butterfly knife is an "edge weapon," can be operated with one hand, and is sometimes carried by gang members. According to Thompson, if these are the criteria for a weapon, then such items as "Swiss Army knives, [B]oy [S]cout knives, steak knives and butter knives could all be considered prohibited weapons." Thompson also points out that Officer

_____

(quoting Webster's Third New International Dictionary 262). A "switchblade knife" is " 'a pocketknife having the blade spring-operated so that pressure on a release catch causes it to fly open.' " Id. (quoting Webster's Third New International Dictionary 2314). A "ballistic knife" is " 'any knife with a detachable blade that is propelled by a spring-operated mechanism.' " Id. (quoting Code § 18.2-308(N)).

[6] As Thompson notes, the trial court, however, entered its judgment of guilt and sentenced Thompson before this Court decided Farrakhan.

9

Giroux admitted that the butterfly knife could have "non-weapon uses."

The Commonwealth counters by relying on the definition of "weapon" used by the Court of Appeals in Delcid:  " 'An instrument of offensive or defensive combat:  something to fight with.' "  32 Va. App. at 18, 526 S.E.2d at 275 (quoting Webster's New Collegiate Dictionary 1326 (1977)).  Continuing, the Commonwealth points to Officer Giroux's testimony concerning the physical characteristics of Thompson's butterfly knife and its design allowing "one-handed operation with a flip of the wrist."  Officer Giroux, argues the Commonwealth, also testified that edge weapons like the butterfly knife are carried by gang members and are especially dangerous for police officers because they are easy to conceal and operate.

The Commonwealth is correct – Thompson's butterfly knife is a "weapon" because the evidence at trial concerning the knife's physical characteristics and method of operation established that it is "designed for fighting purposes" and is "commonly understood to be a 'weapon.' "  Farrakhan, 273 Va. at 182, 639 S.E.2d at 230; accord Harris, 274 Va. at 415, 650 S.E.2d at 92; see also Taylor v. McManus, 661 F. Supp. 11, 13 (E.D. Tenn. 1986) ("the Balisong or 'butterfly' knife originated in the Philippines several hundred years ago . . . . [T]he exotic knife has some utilitarian use, [but] it is most often associated with

10

the martial arts and with combat") (citations omitted); State v. Powell, 798 S.W.2d 709, 711 (Mo. 1990) (describing a butterfly knife as "a martial arts weapon with handles that fold away from the blade"); City of Columbus v. Dawson, 501 N.E.2d 677, 679 (Ohio Ct. App. 1986) (allowing a police officer to testify that the knife at issue was "a balisong fighting knife, commonly known as a butterfly knife"). Accordingly, the Court of Appeals did not err in holding the evidence was sufficient to support the conclusion that the butterfly knife concealed in Thompson's pocket is "a bladed instrument designed for fighting purposes" and thus qualifies as a "weapon" within the meaning of Code § 18.2-308(A). Thompson, 51 Va. App. at 222, 656 S.E.2d at 417.

The next step in the analysis is "to determine if the item possesses such similar characteristics to the enumerated items in the Code § 18.2-308(A) such that its concealment is prohibited." Farrakhan, 273 Va. at 182, 639 S.E.2d at 230. The Court of Appeals, in both Thompson and Delcid, concluded that a butterfly knife is a "weapon of like kind" to a "dirk." See Thompson, 51 Va. App. at 224, 656 S.E.2d at 418; Delcid, 32 Va. App. at 18, 526 S.E.2d at 275. Further, the Commonwealth argues in this appeal that the trial court correctly determined that Thompson's butterfly knife is of like kind to a dirk. We do not agree.

The phrase "of like kind" in Code § 18.2-308(A) is not defined in the statute.  Thus, we give the phrase its ordinary meaning, considering the context in which it is used.  Jones v. Commonwealth, 276 Va. 121, 125, 661 S.E.2d 412, 414 (2008).  The term "like" is defined as "[e]qual in quantity, quality, or degree; corresponding exactly[; s]imilar or substantially similar."  Black's Law Dictionary 947 (8th ed. 2004).  The term "kind" is defined as "a group united by common traits or interests."  Webster's Third New International Dictionary 1243 (1993).  Considering these definitions, we hold that, in order to prove the particular knife found in Thompson's pocket is "of like kind," the Commonwealth had to prove that it is "substantially similar" to one of the weapons enumerated in Code § 18.2-308(A).

In Delcid, the Court of Appeals described the butterfly knife at issue as a knife

> consist[ing] of a single blade with a two-part hinged handle, which folds to enclose the blade.  A person holding one part of the closed handle can flip the other part open, leaving the blade exposed and locked, thus creating a straight-bladed knife approximately nine inches long.  The blade is four inches long, with a sharp point.  One edge of the blade is sharpened. The other is not.

32 Va. App. at 17, 526 S.E.2d at 274.  While that description also accurately depicts the butterfly knife found in Thompson's

12

pocket, those physical characteristics alone do not factually demonstrate that it is substantially similar to a dirk.

We have previously defined a "dirk" as " 'a long straight-bladed dagger' " or " 'a short sword.' " Wood v. Henry County Public Schools, 255 Va. 85, 95 n.6, 495 S.E.2d 225, 261 n.6 (quoting Webster's Third New International Dictionary 642 (1981)); see also Richards v. Commonwealth, 18 Va. App. 242, 246 n.2, 443 S.E.2d 177, 179 n.2 (1994) (defining a dirk as "any stabbing weapon having two sharp edges and a point, including daggers, short swords, and stilettos").  A "dagger" is "a short knife used for stabbing," and its definition refers to a "stiletto."  Webster's Third New International Dictionary 570 (1993).  However, the definition of a "stiletto" is not particularly helpful, as it is defined as "a slender dagger with a blade that is thick in proportion to its breadth."  Id. at 2243.  The definition of a "sword" is more instructive:  "a weapon with a long blade for cutting or thrusting set in a hilt usually terminating in a pommel and often having a tang or a protective guard where the blade joins the handle."  Id. at 2314.

Thompson's butterfly knife itself and its observable physical characteristics are the only evidence in the record relevant to the factual question whether that particular knife is of like kind to a dirk or one of the other enumerated weapons

13

in Code § 18.2-308(A).  Upon comparing its physical characteristics to those of either a dagger or a sword, both of which are included in the definition of a dirk, see Wood, 255 Va. at 95 n.6, 495 S.E.2d at 261 n.6, it is obvious, however, that Thompson's butterfly knife is not substantially similar to a dirk.  While the butterfly knife's blade is four inches long and has a sharp point at the end of the blade, it contains only one sharp edge instead of two and has no protective guard between the blade and the handle.  Without two sharp edges and a protective guard, we conclude that the butterfly knife is not designed for stabbing purposes like a dagger, but rather for cutting purposes.

On the other hand, a sword's blade may be used for cutting or thrusting.  However, one important feature of a sword is for the blade to be set in a hilt.  Thompson's butterfly knife does not have a hilt.  Instead, it is more akin to a pocketknife, in that the blade is movable from its handle, and it folds into itself.

We thus conclude the evidence was insufficient as a matter of law to establish beyond a reasonable doubt that the butterfly knife found in Thompson's pocket is "of like kind" to a dirk or any other weapon enumerated in Code § 18.2-308(A).  To make that factual determination, the trial court relied solely on the Court of Appeals' decision in Delcid and the circumstances under

14

which the police discovered the butterfly knife in Thompson's pocket to find otherwise.  But, as we explained in Farrakhan, "[s]ubsequent use or circumstances may not be considered in the definitional analysis of 'weapon.'"  273 Va. at 182, 639 S.E.2d at 230.  Nor can such evidence be used to determine whether a particular weapon is "of like kind" to one of the weapons enumerated in Code § 18.2-308(A).

"We are required to construe Code § 18.2-308(A) strictly against the Commonwealth and to confine the statute to those offenses clearly proscribed by its plain terms."  Harris, 274 Va. at 415, 650 S.E.2d at 92 (citing Harward v. Commonwealth, 229 Va. 363, 365, 330 S.E.2d 89, 90 (1985) (penal statutes "cannot be extended by implication but must be confined to those offenses proscribed by the language employed")).  Accordingly, Thompson " 'is entitled to the benefit of any reasonable doubt about the construction of a penal statute.'"  Id. (quoting Martin v. Commonwealth, 224 Va. 298, 300-01, 295 S.E.2d 890, 892 (1982)).  As we have stated previously, "[i]t is . . . the role of the General Assembly, not this Court, to craft any needed revisions to Code § 18.2-308(A) and to decide what items to include within the statute's proscription."  Id.  The General Assembly can certainly include a butterfly knife or balisong as one of the prohibited weapons enumerated in Code § 18.2-308(A) if it is so inclined.

CONCLUSION

Although the evidence is sufficient to prove that Thompson's butterfly knife is a "weapon," it is insufficient as a matter of law to establish beyond a reasonable doubt that the particular knife at issue is "of like kind" to a dirk or any other weapon enumerated in Code § 18.2-308(A).  The conclusion of the trial court, acting as the trier of fact, that Thompson's butterfly knife is "of like kind" to a dirk is plainly wrong and without evidence to support it.  See Code § 8.01-680.  For that reason, we will reverse the judgment of the Court of Appeals, vacate Thompson's conviction under Code § 18.2-308.2(A), and dismiss the amended indictment.

Reversed, vacated, and dismissed.