UPON A REHEARING EN BANC
POWELL, Judge.
Johnathan Wesley McMillan (“McMillan”) appeals his convictions for attempted capital murder, in violation of Code §§ 18.2-25 and 18.2-31, and possession of a concealed weapon by a convicted felon, in violation of Code § 18.2-308.2(A). He argues that the Commonwealth failed to produce sufficient evidence to convict him of either charge. A panel of this *395 Court affirmed McMillan’s conviction for attempted capital murder. See McMillan v. Commonwealth, Record No.2074-07-2, 2009 WL 667190 (Va.Ct.App. Mar. 17, 2009). A majority of the panel reversed McMillan’s conviction of possession of a concealed weapon by a previously convicted felon, concluding that the knife McMillan possessed was neither one of those items enumerated in Code § 18.2-308(A) nor was it a weapon.
The Commonwealth petitioned for rehearing en banc, asserting the panel erred in finding the evidence was insufficient to support McMillan’s conviction of possession of a concealed weapon by a felon. We granted the Commonwealth’s petition for rehearing on that issue and stayed the panel mandate.[1] On rehearing en banc we hold that the evidence, viewed in the light most favorable to the Commonwealth, neither establishes that the knife McMillan possessed was one of the items enumerated in Code § 18.2-308(A) nor that it is a weapon of like kind to one enumerated. Therefore, we reverse appellant’s conviction for possession of a concealed weapon by a convicted felon and dismiss the indictment.
I. BACKGROUND
In determining the sufficiency of the evidence, we consider the evidence in the light most favorable to the Commonwealth, as it prevailed below, and grant to it all reasonable inferences. Morris v. Commonwealth, 272 Va. 732, 734, 636 S.E.2d 436, 437 (2006). So viewed, the evidence proves that on September 8, 2006, police pursued McMillan in a high speed chase that ended when McMillan intentionally crashed the vehicle that he was driving into a vehicle driven by a Virginia State Police Trooper, Nathan Lee Powell. After the crash, Trooper Powell searched the truck McMillan had been driving and found a knife in a sheath riveted to the inside of the driver’s side door. Trooper Powell testified that the knife was a scuba diver’s *396 knife with a full tang. The knife was approximately eight and one half inches long, less than four inches of which constituted the blade. Trooper Powell described the knife as “rigid on one side” and “smooth on the other.” McMillan, who had previously been convicted of at least one felony, told Trooper Powell that he carried the knife for protection.
II. ANALYSIS
The law prohibits a felon from “knowingly and intentionally carry[ing] about his person, hidden from common observation, any weapon described in subsection A of § 18.2-308.” Code § 18.2-308.2(A). Code § 18.2-308(A) enumerates several weapons, including, “any dirk, bowie knife, switchblade knife, ballistic knife, machete, razor, slingshot, spring stick, metal knucks, or blackjack----” This section also prohibits concealing “any weapon of like kind as those enumerated.... ” Id. McMillan makes two arguments in support of his claim that the evidence was insufficient to convict him of possession of a concealed weapon by a convicted felon. First, he argues that the evidence failed to prove that his knife was a weapon within the scope of Code § 18.2-308.2(A). Next, he argues that his knife was not hidden from common observation. We agree that the knife McMillan possessed was not a weapon and, therefore, we do not need to address McMillan’s argument that the item was not concealed.
To convict McMillan under Code § 18.2-308.2(A), the Commonwealth must prove, inter alia, that the knife McMillan possessed is one of the statutorily proscribed items or a “weapon of like kind.” Code § 18.2-308.2(A); see also Thompson v. Commonwealth, 277 Va. 280, 287, 673 S.E.2d 469, 472 (2009); Farrakhan v. Commonwealth, 273 Va. 177, 182, 639 S.E.2d 227, 230 (2007). When reviewing whether the evidence is sufficient, we “presume the judgment of the trial court to be correct” and reverse only if the trial court’s decision is “plainly wrong or without evidence to support it.” Davis v. Commonwealth, 39 Va.App. 96, 99, 570 S.E.2d 875, 876-77 (2002). “The construction of a statute, however, is a *397 question of law reviewed de novo on appeal.” Thompson, 277 Va. at 287, 673 S.E.2d at 472 (citing Farrakhan, 273 Va. at 180, 639 S.E.2d at 229.)
In Farrakhan, 273 Va. at 182, 639 S.E.2d at 230, our Supreme Court provided an analytic framework for evaluating whether an item falls within the purview of this statute. The initial inquiry is whether the bladed item is one enumerated in the statute. Id. If it is, the evidence is sufficient to convict and the inquiry ends. Id. However, if the bladed item is not enumerated, the next question is: is the bladed item a weapon? Id.; Harris v. Commonwealth, 274 Va. 409, 415, 650 S.E.2d 89, 91-92 (2007). The analysis ends here if the bladed item is not a weapon. Farrakhan, 273 Va. at 183, 639 S.E.2d at 230; Harris, 274 Va. at 415, 650 S.E.2d at 92. Only if the item is a weapon, does “the analysis continue[ ] to determine if the item possesses such similar characteristics to the enumerated items in Code § 18.2-308(A) such that its concealment is prohibited.” Farrakhan, 273 Va. at 182, 639 S.E.2d at 230.
Applying that framework here, we must first determine whether the knife McMillan possessed is one of the items enumerated in Code § 18.2-308(A). Our Supreme Court has
previously defined a “dirk” as “‘a long straight-bladed dagger’ ” or “ £a short sword.’ ” Wood v. Henry County Public Schools, 255 Va. 85, 95 n. 6, 495 S.E.2d 255, 261 n. 6 [(1998)] (quoting Webster’s Third New International Dictionary 642 (1981)); see also Richards v. Commonwealth, 18 Va.App. 242, 246 n. 2, 443 S.E.2d 177, 179 n. 2 (1994) (defining a dirk as “any stabbing weapon having two sharp edges and a point, including daggers, short swords, and stilettos”). A “dagger” is “a short knife used for stabbing,” and its definition refers to a “stiletto.” Webster’s Third New International Dictionary 570 (1993). However, the definition of a “stiletto” is not particularly helpful, as it is defined as “a slender dagger with a blade that is thick in proportion to its breadth.” Id. at 2243. The definition of a “sword” is more instructive: “a weapon with a long blade for cutting or thrusting set in a hilt usually terminating in a pommel and *398 often having a tang or a protective guard where the blade joins the handle.” Id. at 2314.
Thompson, 277 Va. at 290, 673 S.E.2d at 473.
The Court has also said that
[a] “bowie knife” is “ ‘a large hunting knife adapted [especially] for knife-fíghting’ ” with a “ 10 to 15 inch [ ] long’ ” blade. [Wood, 255 Va. at 95 n. 6, 495 S.E.2d at 261 n. 6] (quoting Webster’s Third New International Dictionary 262). A “switchblade knife” is “ ‘a poeketknife having the blade spring-operated so that pressure on a release catch causes it to fly open.’ ” Id. (quoting Webster’s Third New International Dictionary 2314). A “ballistic knife” is “ ‘any knife with a detachable blade that is propelled by a spring-operated mechanism.’” Id. (quoting Code § 18.2-308(N)).
Id. at 288 n. 5, 673 S.E.2d at 472 n. 5.
The knife McMillan possessed is clearly neither a “switchblade” knife nor a “ballistic knife,” and the Commonwealth does not claim otherwise. On appeal, the Commonwealth argued that McMillan’s knife was either a dirk or a bowie knife or a “weapon of like kind” to one of those knives.
Observation of McMillan’s knife, however, reveals that it does not match the description of a dirk or bowie knife. Unlike a dirk, the knife McMillan possessed lacked a “long blade” and a “protective guard where the blade meets the handle”[2] or a “hilt ... terminating in a pommel.”[3] Id. at 290, 673 S.E.2d at 473. As previously stated, the blade on McMil *399 Ian’s knife could hardly be described as long in that it measured approximately 3.75 inches. Further observation reveals that McMillan’s knife does not fit the definition of a dirk, described as any stabbing weapon having two sharp edges and a point. The knife at issue has one sharp edge and one manifold edge; approximately half of which is serrated and the remainder of which is blunt. The blunt portion culminates in the point, making its stabbing capability dubious. An examination of the knife at issue similarly reveals that it does not meet the definition of a “bowie knife.” As previously defined by our Supreme Court, a bowie knife is a large knife that has been modified to be a fighting knife. Id. at 288 n. 5, 673 S.E.2d at 472 n. 5. The remainder of that definition that our Supreme Court quoted with approval in Thompson, 277 Va. at 288 n. 5, 673 S.E.2d at 472 n. 5, provides that the long blade of a bowie knife is typically curved concavely to a point. Wood, 255 Va. at 95 n. 6, 495 S.E.2d at 261 n. 6 (citing Webster’s Third New International Dictionary 262 (1981)); see also Webster’s Third New International Dictionary, supra, at 262. The blade of McMillan’s knife is 3.75 inches, and the total length of the knife is 8.25 inches. The blade is straight on one side and serrated on a portion of the other side. No part of the blade is concave. Moreover, nothing in the record indicates that an 8.25 inch knife is large for a knife or that this knife had been adapted for fighting. Thus, the evidence is insufficient to prove that the knife McMillan possessed was a bowie knife.
Because the item McMillan possessed is not one of the enumerated items in Code § 18.2-308(A), the analysis then turns to whether the item is a weapon. For an item “to be a “weapon’ within the definition of “weapon of like kind,’ the item must be designed for fighting purposes or commonly understood to be a “weapon.’ ” Harris, 274 Va. at 415, 650 S.E.2d at 92 (quoting Farrakhan, 273 Va. at 182, 639 S.E.2d at 230). Our Supreme Court was recently called upon to determine whether a butterfly knife is a statutorily proscribed weapon or one of like kind. Thompson, 277 Va. at 288-89, 673 S.E.2d at 472-73. In Thompson, a police officer testified that knives *400 like the butterfly knife at issue are “ ‘edge weapons [that] are very dangerous for police officers, due to the fact that they are easily concealed, and specifically ones like [Thompson’s] that only require one hand to operate are very dangerous’ ” and that he has retrieved “ ‘this exact type of knife’ ... from gang members on several occasions.” Id. at 285, 673 S.E.2d at 470. Our Supreme Court concluded that there was sufficient evidence in the record to prove that
Thompson’s butterfly knife is a “weapon” because the evidence at trial concerning the knife’s physical characteristics and method of operation established that it is “designed for fighting purposes” and is “commonly understood to be a ‘weapon.’ ” Farrakhan, 273 Va. at 182, 639 S.E.2d at 230; accord Harris, 274 Va. at 415, 650 S.E.2d at 92.
Id. at 288, 673 S.E.2d at 472-73. Our Supreme Court went further to cite cases from other jurisdictions that discussed the nature of a butterfly knife, its physical characteristics, and its reputation as a weapon. Id. (citing Taylor v. McManus, 661 F.Supp. 11, 13 (E.D.Tenn.1986); State v. Powell, 798 S.W.2d 709, 711 (Mo.1990); City of Columbus v. Dawson, 28 Ohio App.3d 45, 501 N.E.2d 677, 679 (1986)).
Such evidence is lacking, however, from the facts of this case regarding the knife in question. At McMillan’s trial, the police officer testified that McMillan possessed a scuba knife. Unlike the police officer in Thompson, 277 Va. at 285, 673 S.E.2d at 470, the officer in this case did not testify about the knife’s method of operation, the purpose for which it was designed, or its commonly understood uses. Therefore, the record is devoid of any facts on which one could find that the knife is either designed for fighting purposes or commonly understood to be a weapon.
Though McMillan testified that he carried the knife for protection, this statement does not change the physical characteristics of the knife he possessed or its method of operation such that it becomes a weapon.[4] See Thompson, 277 Va. at *401 291, 673 S.E.2d at 474 (stating that “as we explained in Farrakhan, ‘[subsequent use or circumstances may not be considered in the definitional analysis of “weapon.” ’ ” (citation omitted)). Nor can the purpose for which an individual carries a knife be dispositive as to whether that knife is either “designed for fighting purposes” or “commonly understood” to be a weapon. Cf. State v. Giltner, 56 Haw. 374, 537 P.2d 14, 16 (1975) (holding that a scuba diver’s knife is not a “deadly or dangerous weapon”).
Though the knife in question, much like a kitchen knife, pocket knife, box cutter, butterfly knife, or letter opener, could be a dangerous instrument in the hands of a person with criminal intent, the issue before this Court is “what is proscribed by statute as unlawful not simply what may be dangerous.” Farrakhan, 273 Va. at 183, 639 S.E.2d at 230. We strictly construe penal statutes against the Commonwealth. Harris, 274 Va. at 414, 650 S.E.2d at 91 (citing Farrakhan, 273 Va. at 182, 639 S.E.2d at 230). We conclude that the evidence before us does not establish that McMillan’s “scuba” knife is designed for fighting purposes nor is it commonly understood to be a weapon. Because we conclude that McMil *402 Ian’s knife is neither enumerated in the statute nor is it a weapon, we need not address whether it is a weapon of like kind.
III. CONCLUSION
For these reasons, we reverse and vacate McMillan’s conviction for possession of a concealed weapon by a convicted felon, in violation of Code § 18.2-308.2(A).

Reversed and dismissed.

. This Court's decision to grant rehearing en banc vacates only the prior decision related to the issue or issues presented by the party requesting a rehearing. Ferguson v. Commonwealth, 51 Va.App. 427, 432-33, 658 S.E.2d 692, 695 (2008).

. Trooper Powell testified that the knife had a "full tang.” A "tang” is
a piece that forms an extension from the blade or analogous part of an instrument (as a table knife or fork, file, chisel, or sword) and connects with the handle and that may be a thin flat plate on each side of which a rounded piece is secured to form the handle or that may be a tapered piece inserted into the haft or handle.
Webster’s Third New International Dictionary 2336 (1993). Thus, the "full tang” described by Trooper Powell means that the blade of McMillan’s knife continued through the entire handle.

. A “pommel” is "the knob on the hilt of a sword or saber.” Webster’s Third New International Dictionary, supra, at 1762.

. In his dissent, Judge Kelsey affords great weight to the Supreme Court of Virginia’s language in Farrakhan: "Because an offense under *401 Code § 18.2-308(A) is ‘possessory’ in nature, it is committed upon concealment. Subsequent use or circumstances may not be considered in the definitional analysis of ‘weapon.’ " Infra at 409, 686 S.E.2d at 533. The dissent reasons that this language supports the proposition that the individual appellant’s intended use at the moment he conceals the item is relevant as to whether the item appellant possessed is a proscribed item or a weapon of like kind. Id. Indeed, Judge Kelsey cites to the Supreme Court of Virginia's decision in Thompson for the proposition that "a knife can be a weapon either by design or common use.” Id. This overly literal interpretation of the language in Farrakhan, however, ignores the remainder of the paragraph the dissent cited and eviscerates the analytic framework laid out in Farrakhan and applied in Thompson. A logical reading of these cases and the analytic framework set forth therein indicates that it is the common use, not intended use by an individual, that is relevant to whether an item is a weapon of like kind under Code § 18.2-308.2(A). Had Farrakhan intended to use the chef’s knife to perpetrate a robbery at the moment he concealed it, as one could infer from the facts of that case, the chef’s knife would still only be a cooking instrument and not a proscribed item or a weapon of like kind. Thus, McMillan's intended use for the *402 knife he concealed is only relevant, if at all, to a determination of the knife's common use.