HUMPHREYS, J.,
dissenting.
It would be difficult to point to a statute in the Code of Virginia that contains language more confusing, vague, and difficult to parse than Code § 18.2-308(A). For many years, both this Court and our Supreme Court have strived mightily to construe it in a way that recognizes its presumptive constitutionality and, at the same time, to apply its sometimes archaic and rather vague itemization of prohibited weapons to more modern implements that have equivalent utility for doing *410 violence to others. Here, we are once again called upon to answer the increasingly metaphysical question of when is a knife a “weapon.”[11] On the record before us and for the reasons that follow, I must respectfully disagree with the majority’s holding that McMillan’s knife is not a weapon within the meaning of Code § 18.2-308.2. Therefore, I dissent from the judgment.
Code § 18.2-308.2 provides that it is a felony for a previously convicted felon “to knowingly and intentionally carry about his person, hidden from common observation, any weapon described in subsection A of § 18.2-308.” Code § 18.2-308(A) enumerates several weapons, including, “any dirk, bowie knife, switchblade knife, ballistic knife, machete, razor” or “any weapon of like kind as those enumerated in this subsection.” As explained by the Supreme Court in Farrakhan v. Commonwealth, 273 Va. 177, 182, 639 S.E.2d 227, 230 (2007), the courts must undertake a multi-step analysis to determine whether an item falls within the scope of Code § 18.2-308(A). See also Thompson v. Commonwealth, 277 Va. 280, 287, 673 S.E.2d 469, 472 (2009).
First, the Court explained, “[i]f the bladed item in question meets the definition of an enumerated item within Code *411 § 18.2-308(A), the evidence is clearly sufficient for a conviction under the statute.” Farrakhan, 273 Va. at 182, 639 S.E.2d at 230. If it does not meet the definition of one of the enumerated items, it must then be established as a “weapon.” Id. If it is determined to be a “weapon,” it then must be a weapon “of like kind” to one of the enumerated weapons to be proscribed by Code § 18.2-308(A). Id. “Generally, a weapon is ‘an instrument of offensive or defensive combat: something to fight with.’ ” Gilliam v. Commonwealth, 49 Va.App. 508, 514, 642 S.E.2d 774, 777 (2007) (quoting Delcid v. Commonwealth, 32 Va.App. 14, 18, 526 S.E.2d 273, 275 (2000)); see also Thompson, 277 Va. at 288, 673 S.E.2d at 472 (noting that this is the definition used by the Court of Appeals). An item is a “weapon” if “the evidence demonstrates that it is ‘designed for fighting purposes’ or ‘commonly understood to be a “weapon.” ’ ” Thompson, 277 Va. at 288, 673 S.E.2d at 472 (quoting Farrakhan, 273 Va. at 182, 639 S.E.2d at 230). It is a weapon “of like kind” if it “ ‘possesses such similar characteristics to the enumerated items in Code § 18.2-308(A) such that its concealment is prohibited.’ ” Id. at 289, 673 S.E.2d at 473 (quoting Farrakhan, 273 Va. at 182, 639 S.E.2d at 230). Given the holding of our Supreme Court in Thompson, I now agree with the majority that the knife in question here does not meet the definition of an enumerated item.[12] However, I disagree with the majority that the knife in this case is not a weapon at all and, because it exhibits many of the characteristics of both a bowie knife and a dirk, I would hold that it meets the definition of a “weapon” and is a weapon “of like kind” to either or both.[13]
*412 In determining whether an item is “designed for fighting purposes” or “commonly understood to be a weapon” the court looks to the physical characteristics and method of operation of the item. Thompson, 277 Va. at 289, 673 S.E.2d at 472 (“[T]he evidence at trial concerning the knife’s physical characteristics and method of operation established that it is ‘designed for fighting purposes’ or is ‘commonly understood to be a “weapon.” ’ ” (citation omitted)). In Thompson, the Supreme Court concluded that the evidence was sufficient to prove that it was a weapon based not only on the officer’s testimony that it was an item carried by gang members in the past and dangerous to police officers, but also based on the officer’s testimony of the knife’s physical characteristics and design. Id. at 288, 673 S.E.2d at 472. In Gilliam this Court determined that the knife in question was a weapon based on its physical characteristics and on the fact that “the knife is clearly not an ‘innocuous household [knife or an] industrial kni[fe] which may be carried for legitimate purposes.’” 49 Va.App. at 514-15, 642 S.E.2d at 777-78 (2007) (quoting Richards v. Commonwealth, 18 Va.App. 242, 246 n. 2, 443 S.E.2d 177, 179 n. 2 (1994)).[14]
*413 [[Image here]]
As shown in the photograph above, the knife here consists of a fixed blade with one sharp edge and one serrated edge culminating in a point suitable for stabbing. The knife is eight and one half (8 1/2) inches long with the blade measuring about four (4) inches. At trial, the officer described the knife as “rigid [[sic], in context it is obvious that what he actually said was “ridged”] on one side, smooth on the other, comes to a point,” and further described it as “some sort of diver’s knife.” While the officer described it as a diver’s knife and did not mention the knife’s method of operation, purpose for which it is designed, or uses which it is commonly understood to be put to, we have the physical description on the record and the actual knife before us as an exhibit. In addition we have the trial court’s factual finding that it is “two-edged” and has “a point to it.” Based on these facts, this knife is not just an “innocuous household knife” nor is it an “industrial knife” carried for a legitimate purpose.[15] Thus, in my view and contrary to the holding of the majority, the evidence at trial established that the knife in issue is a bladed instrument that can be used for offensive or defensive combat and is therefore “commonly understood to be a ‘weapon.’ ”
*414 Because I would hold that the knife in this ease is a weapon, I now turn to whether the knife “‘possesses such similar characteristics to the enumerated items in the Code § 18.2-308(A) such that its concealment is prohibited.’ ” Thompson, 277 Va. at 289, 673 S.E.2d at 473 (quoting Farrakhan, 273 Va. at 182, 639 S.E.2d at 230). To be a weapon “of like kind,” the item has to be “substantially similar” to an enumerated weapon. Id. at 290, 673 S.E.2d at 473. In addition to the dictionary definition recited in Wood, supra note 13, other characteristics of a bowie knife are that it is “ ‘a stabbing weapon having a single sharp edge, a dull or serrated flat edge and a point, such as a hunting knife, a fishing knife or a survivalist’s knife.’ ” Gilliam, 49 Va.App. at 514 n. 5, 642 S.E.2d at 777 n. 5 (quoting Richards, 18 Va.App. at 246 n. 2, 443 S.E.2d at 179 n. 2). Both definitions are consistent with each other and I therefore take them together in determining whether the weapon in this case is “of like kind” to a bowie knife.[16] Moreover, as noted in Wood and reiterated in Thompson, a dirk is “a long straight-bladed dagger or a short sword.” Thompson, 277 Va. at 282, 673 S.E.2d at 473.
The knife in question in this case, while not precisely congruent to either, has many significant similarities to both a bowie knife and a dirk. Here, even though the knife is not ten to fifteen (10-15) inches long, nor does it have a slight dip at the top of the blade, it has other substantially similar characteristics to both types of weapon. The knife here is eight and one half (8 1/2) inches long and is clearly designed for either cutting or stabbing. Its blade has one sharp edge, a serrated flat edge, and comes to a sharp point. As a “diver’s knife,” it *415 is certainly akin to a hunting, fishing or survivalist’s knife. It also has a fixed blade suitable for stabbing like a dagger, and it is typically carried in a sheath and thus shares the essential characteristics of a dirk. In my view, even though the officer describes the knife as being a “diver’s knife,” this fact does not take away the knife’s obvious physical characteristics that are substantially similar to those of both a bowie knife and a dirk. Applying these two definitions separately to the knife in question, I would hold that it is substantially similar and thus “of like kind” to both a bowie knife and a dirk and therefore proscribed by the statute.
Because I would hold that McMillan’s knife is a “weapon of like kind,” I would also address McMillan’s contention that the knife was not concealed. That argument, however, is one that he makes for the first time on appeal. In his brief, McMillan acknowledged that he failed to present that argument to the trial court, and asks us to invoke the “ends of justice” exception of Rule 5A:18 and address the merits of his claim.
Rule 5A:18 provides that “[n]o ruling of the trial court ... will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.” “The ends of justice exception to Rule 5A:18 is narrow and is to be used sparingly.” Copeland v. Commonwealth, 42 Va.App. 424, 442, 592 S.E.2d 391, 399 (2004). In order for the exception to apply, “[t]he record ‘must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred.’ ” Akers v. Commonwealth, 31 Va.App. 521, 528 n. 2, 525 S.E.2d 13, 16 n. 2 (2000) (quoting Redman v. Commonwealth, 25 Va.App. 215, 221, 487 S.E.2d 269, 272 (1997)).
“In order to show that a miscarriage of justice has occurred, an appellant must demonstrate more than that the Commonwealth failed to prove an element of the offense.” Redman, 25 Va.App. at 221, 487 S.E.2d at 272-73. The “appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove *416 that an element of the offense did not occur.” Id. at 222, 487 S.E.2d at 273. “Therefore, ‘in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense.’ ” Wheeler v. Commonwealth, 44 Va.App. 689, 692, 607 S.E.2d 133, 135 (2005) (quoting Lewis v. Commonwealth, 43 Va.App. 126, 134, 596 S.E.2d 542, 546 (2004)).
McMillan does not claim that carrying a concealed weapon is not a criminal offense. Thus, for the ends of justice exception to be applicable here, the record must contain evidence affirmatively proving that McMillan’s knife was not “hidden from common observation.” Code § 18.2-308.2. Trooper Powell’s testimony is the only information in the record regarding the location of McMillan’s knife. Trooper Powell testified that he found the knife in a sheath that was “riveted” to the inside of the driver’s side door of McMillan’s truck. When asked where the sheath was riveted to the door, Powell answered, “Midway, accessible to his left hand.” Regardless of whether that testimony is sufficient to prove that the knife was hidden from common observation, it does not affirmatively prove that it was not. Thus, the ends of justice exception is not applicable.
For these reasons, I would affirm McMillan’s conviction for carrying a concealed weapon.

. Although framed in legalese, essentially, like the character portrayed by Paul Hogan in the film "Crocodile Dundee,” we find ourselves repeatedly posing the question in these cases, "You call that a knife?” and occasionally agreeing; "Now THAT’S a knife?” While I am in agreement with Judge Petty that in responding to that question, we should not undertake a "we know it when we see it” type of analysis, I do not agree that we have reached this point yet. No issue of constitutional dimension with respect to this statute has previously been before us and none is before us now, and so, while I am sympathetic to the position expressed by Judge Petty in his concurrence, I am loathe to decide this case on issues neither presented nor briefed. This Court and our Supreme Court have struggled mightily, if perhaps with mixed success, to provide clear and consistent guidance to trial courts, police officers, and the citizens of the Commonwealth regarding the legality of carrying concealed, the contemporary cousins of bowie knives, daggers or dirks-items commonly carried by many in centuries past. Whether we can continue to be successful in this endeavor is obviously a matter of some debate among the members of this Court, but as long as the statute exists, we have a duty to continue to try.

. I agree with the majority that Judge Kelsey's dissent relies upon an incorrect interpretation of the language in Farrakhan and ignores the remainder of the paragraph he cites in support of his analysis, thereby “evisceratpng] the analytic framework laid out in Farrakhan and applied in Thompson." See supra at 401, 686 S.E.2d at 529 n. 4. I further agree with the majority that "[a] logical reading of these cases and the analytic framework set forth therein indicates that it is the common use, not intended use by an individual, that is relevant to whether an item is a weapon of like kind under Code § 18.2-308.2(A).” See id.

. A dirk is defined as “a long straight-bladed dagger formerly carried [especially] by the Scottish Highlanders [and also as] a short sword *412 formerly worn by British junior naval officers.” Webster's Third New International Dictionary 642 (1981). A "bowie knife” is defined as " 'a large hunting knife adapted [especially] for knife-fighting and common in western frontier regions and having a guarded handle and a strong single-edge blade typically 10 to 15 inches long with its back straight for most of its length and then curving concavely and sometimes in a sharpened edge to the point.' " Wood v. Henry County Public Schools, 255 Va. 85, 95 n. 6, 495 S.E.2d 255, 261 n. 6 (1998) (quoting Webster's Third New International Dictionary 262).

. The Court in Gilliam further baised its determination that the knife was a weapon on the circumstances under which the individual possessed the item because at that time the Court held that the " ‘circumstances surrounding its possession and uses’ " were relevant to " 'defining [the] characteristics of the item in question.' " Gilliam, 49 Va.App. at 514, 642 S.E.2d at 777 (quoting Delcid, 32 Va.App. at 19, 526 S.E.2d at 275). However, as noted by the majority, Thompson held that " ‘[subsequent use or circumstances may not be considered in the definitional analysis of "weapon.” ' " 277 Va. at 291, 673 S.E.2d at 474 (quoting Farrakhan, 273 Va. at 182, 639 S.E.2d at 230).

. I recognize that in Farrakhan, and subsequently in Thompson, our Supreme Court made it clear that the use of the item or circumstances of possession may not be considered in the analysis of whether or not a particular item is a " 'weapon' ” impacted by Code § 18.2-308(A). Thompson, 277 Va. at 291, 673 S.E.2d at 474 (quoting Farrakhan, 273 Va. at 182, 639 S.E.2d at 230). Thus, in yet another example of what often makes any attempt to construe this statute particularly difficult, the characterization in the record by Trooper Powell that this particular item was a "diver’s knife” along with the item itself, would seem to provide the entire framework for our analysis and the fact that McMillan told Trooper Powell at the scene that he had riveted the knife to the door of his vehicle where no denizen of the deep was likely to be found and that he did so "for protection” since he was "a country boy living in the city” is of no moment.

. In Goodwin v. Commonwealth, No.2006-04-1, 2005 WL 1610764 (Va.Ct.App. July 12, 2005), this Court noted that both definitions of the bowie knife had been used to define a bowie knife and that they were consistent with each other. While Goodwin is unpublished, this Court can consider the rationale used and adopt it here since it is persuasive. Fairfax County Sch. Bd. v. Rose, 29 Va.App. 32, 39 n. 3, 509 S.E.2d 525, 530 n. 3 (1999) ("Although an unpublished opinion of the Court has no precedential value, see Grajales v. Commonwealth, 4 Va.App. 1, 2 n. 1, 353 S.E.2d 789, 790 n. 1 (1987), a court ... does not err by considering the rationale and adopting it to the extent it is persuasive.”).