COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Malveaux and Senior Judge Clements
Argued by videoconference


DWAIN ALAN WILLIAMS, JR.

                                                  MEMORANDUM OPINION[*] BY
v.       Record No. 0224-20-4               JUDGE JEAN HARRISON CLEMENTS
                                                   DECEMBER 29, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Michael E. Levy, Judge

Jason M. Pelt (Norton Pelt, PLC, on brief), for appellant.

Mason D. Williams, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


The trial court convicted appellant of carrying a concealed weapon, in violation of Code

§ 18.2-308(A). On appeal, appellant challenges the trial court's finding that the knife in question

was a "weapon" prohibited from concealment under the statute.[1]

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." Gerald v. Commonwealth,

295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381 (2016)). In doing so,

we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable

to the Commonwealth and all inferences that may reasonably be drawn from that evidence. Id. at

473.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant had also been charged with assault of the minor victim, J.B. The trial court
acquitted appellant on the assault charge.

On March 29, 2019, ten-year-old J.B. was playing football outside with his adult neighbor, Jamal. At some point, Jamal threw the football over J.B.'s head and the football almost hit appellant's car. Appellant who also was outside warned, "hit my car and see what happens." Appellant then went into his home, came back outside with a "knuckle knife," and walked toward Jamal. J.B. saw the knuckle knife in appellant's hand once appellant got near the sidewalk, and appellant began swinging the knife at a tree. Appellant then put the knuckle knife in his pocket. J.B. testified that appellant approached him and mentioned how quickly he could stab someone. Appellant lifted J.B. off the ground, made stabbing motions and sounds on J.B.'s back and stomach, and "dumped" J.B. on the ground. J.B. then threw a football at appellant because he felt threatened. J.B. was visibly upset when he told his mother about the incident. J.B.'s mother called law enforcement.

Stafford County Sheriff's Sergeant J.P. Aubry responded to the incident and spoke with appellant. Aubry asked appellant if he owned brass knuckles. When appellant confirmed that he did, Aubry asked where they were located; appellant removed them from his pants pocket. The blade of the knife was closed, so it looked more like knuckles. Based on his view of the knife, Aubry did not think that it was spring operated. Aubry also testified that the weapon appeared to have the same operation as brass knuckles; in Aubry's definition, a blunt object that you hold in your hand to inflict pain on someone.

After the close of the Commonwealth's evidence, appellant moved to strike arguing that his weapon did not fit any of the named enumerated items prohibited from concealment. The trial court denied appellant's motion, finding that "whether it is a switchblade knife or metal knucks or a knuckle knife, the Court finds that it is a weapon of like kind to those enumerated in the subsection regarding carrying it concealed." Thus, the trial court denied the motion to strike the carrying a concealed weapon charge.

Appellant admitted that he retrieved the knuckle knife from his desk drawer, brought it out to Jamal, and "gestured like [he] was going to hit [Jamal] in the stomach." Appellant asserted that he displayed the handle to Jamal, not the blade. Appellant stated that he was not trying to show the knuckle knife to J.B. or any other kids playing on the street, so he kept it down by his side. Appellant acknowledged, however, that J.B. must have seen the knuckle knife when appellant approached Jamal. After his interaction with Jamal, appellant put the knuckle knife in his pocket and walked away. Appellant admitted that he knew brass knuckles were illegal and that his knuckle knife could be used as a weapon in the same way as brass knuckles. Appellant stated that he purchased a seatbelt cutter and this knuckle knife in the case of an automobile accident, so he could "bust the window out." Appellant agreed that "his reasoning" for use of the knuckle knife is the same use as brass knuckles.

Appellant renewed his motion to strike in his closing argument, and the trial court ruled that the knuckle knife was a ballistic knife or a weapon of like kind to those proscribed by Code § 18.2-308(A). The trial court subsequently convicted appellant. This appeal follows.

ANALYSIS

Appellant argues that the trial court erred in finding that the knuckle knife he possessed fit one of the enumerated definitions of weapons prohibited from concealment by Code § 18.2-308(A).[2] Code § 18.2-308(A) provides in pertinent part:

> [i]f any person carries about his person, hidden from common observation, . . . (ii) any dirk, bowie knife, switchblade knife, ballistic knife, machete, razor, sling bow, spring stick, metal knucks, or blackjack; . . . or (v) any weapon of like kind as those enumerated in this subsection, he is guilty of a Class 1 misdemeanor . . . .

_____

[2] While appellant's assignment of error speaks to the enumerated list of weapons prohibited from concealment, his argument also addresses whether the knuckle knife is a weapon of like kind to those enumerated in the statute.

In Farrakhan v. Commonwealth, 273 Va. 177 (2007), our Supreme Court developed a test to determine whether an item, if concealed, is proscribed by Code § 18.2-308(A). Gilliam v. Commonwealth, 49 Va. App. 508, 513 (2007). "If the bladed item in question meets the definition of an enumerated item within Code § 18.2-308(A), the evidence is clearly sufficient for a conviction under the statute." Farrakhan, 273 Va. at 182. But where, as here, the item is not one of those expressly enumerated in the statute, we must determine if it is a "weapon of like kind."

In making that determination, we note first that the item must be a weapon. Id. "[T]o be a weapon," under the statute, "the item must be designed for fighting purposes or commonly understood to be a 'weapon.'" Id. The statute does not define "metal knucks," but this Court has previously equated brass knuckles with metal knucks. Commonwealth v. Rice, 28 Va. App. 374, 376 (1998). Brass knuckles are defined as "a piece of metal designed to fit over the fingers as a weapon for use in a fistfight." Brass Knuckles, Black's Law Dictionary (11th ed. 2019). By definition, brass knuckles are a weapon because they are designed for fist-fighting purposes. Sergeant Aubry testified that in his experience, brass knuckles are used to inflict pain upon another. Appellant testified that his knife is used in the same manner as brass knuckles. Therefore, we hold that there is sufficient evidence to support the conclusion that appellant's knuckle knife is a weapon.

Finally, if the item is a weapon, "it must then be determined if the item possesses similar characteristics to the enumerated items in Code § 18.2-308(A), thus, making its concealment prohibited." Gilliam, 49 Va. App. at 513 (citing Farrakhan, 273 Va. at 182). That is, the evidence must prove that appellant's weapon was "'substantially similar' to one of the weapons enumerated in Code § 18.2-308(A)." Thompson v. Commonwealth, 277 Va. 280, 290 (2009). We hold that it does. The knuckle knife has similar characteristics of metal knucks. As seen in the photos of the weapon, there is a grip for the hand to fit in, with a large block of metal or other material that extends well above the holder's hand. This weapon also has a knife blade that appears to fold in.

While the addition of the blade is not included in the definition of metal knucks, this differing characteristic does not disqualify the weapon as a "weapon of like kind." See Gilliam, 49 Va. App. at 516 ("[Code § 18.2-308(A)] contemplates that some 'weapons' will resemble those specifically delineated in the statute, but will in fact have some different characteristics."). Accordingly, we hold that the evidence was sufficient to support the trial court's conclusion that the knuckle knife has substantially similar characteristics to metal knucks; thus, Code § 18.2-308(A) proscribed appellant from carrying the weapon about his person, hidden from common observation.

## CONCLUSION

Having met the Farrakhan test, we hold that the evidence was sufficient to support appellant's conviction under Code § 18.2-308(A). Accordingly, we affirm the judgment of the trial court.

Affirmed.