COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges O'Brien, Causey and Bernhard
Argued at Fredericksburg, Virginia


SEAN ANDREW BULLOCK

                                          MEMORANDUM OPINION[*] BY
v.      Record No. 0017-24-4             JUDGE DORIS HENDERSON CAUSEY
                                              SEPTEMBER 30, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Dennis L. Hupp, Judge Designate

Corinne J. Magee (The Magee Law Firm, PLLC, on brief), for
appellant.

Kimberly A. Hackbarth, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


A jury convicted Sean Andrew Bullock of carrying a concealed weapon after being
convicted of a felony, in violation of Code § 18.2-308.2.  The trial court sentenced Bullock to
five years' imprisonment, with all but time-served suspended.  On appeal, Bullock asserts that
the trial court erred when it denied his motion to strike because his knife was not a weapon "of
like kind" pursuant to Code § 18.2-308.  Bullock also contends that the trial court erred in adding
"for fighting purposes or commonly understood to be a weapon" to his proffered jury instruction
defining illegal bladed weapons under Code § 18.2-308(A).  We agree with Bullock that the
knife he possessed did not fall within the statutory proscription and reverse his conviction.

BACKGROUND

On May 19, 2019, Fauquier County Sheriff's Corporal John Coppage was dispatched to a
"domestic disturbance."  Coppage initially went to one residence but after receiving certain

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

information went to 3103 Longview Lane "to make contact with the . . . individual that we were looking for." Coppage described the address as "a large estate with a main house and then a guest house. . . . There was a couple of trees, but it wasn't like a heavily wooded area."

At the main house Coppage came upon several troopers and a man he identified at trial as Bullock. Bullock was holding what looked like a rifle but turned out to be a BB gun. When Bullock noticed Coppage, "he began to flee." Bullock ran for about 50 yards but stopped when the officers caught up with him. Bullock dropped the BB gun about 30 seconds before surrendering. After being handcuffed, the troopers searched Bullock. They recovered an expandable baton, a cellphone, and a wallet. Coppage testified that both the BB gun and the baton were legal objects. The wallet contained a collapsible knife shaped like a credit card that Coppage testified was intended to be concealed in the wallet.

Officer A.T. Vescovi was also present at the scene at the residence. After Bullock was handcuffed, Vescovi put him in a police cruiser. While in the cruiser, Bullock told Vescovi that "the previous officers had missed something and brought it to [his] attention." Bullock informed Vescovi that there was a sheathed knife around his neck. Vescovi took the knife, which was "underneath a shirt and completely concealed to [Vescovi's] view." A cord was attached to the knife and draped around Bullock's neck. The Commonwealth introduced the knife as its Exhibit 5, again without objection.

Vescovi testified that the knife concealed around Bullock's neck had ridges, like his fingers. Vescovi's hand could grip the knife, and his index finger went inside the ring function. Vescovi estimated the knife's length as a "a few inches" or a couple of inches "at least." When the knife was worn around a person's neck, it would be upside down in the sheath but could be taken out from it. When asked to describe the knife, Vescovi stated: "I would describe it as a knife you would use in fighting circumstances, whether it be an offensive weapon or a defensive weapon. It's designed

specifically for, in my experience . . . ." At that point defense counsel objected to Vescovi's "opinion" on the ground that he was not an expert witness, and the trial court sustained the objection.

The house where Bullock was arrested was in a rural area where "snakes and . . . other vermin" sometimes had to be gotten "rid of." Vescovi testified that he had grown up "in a rural area and . . . wouldn't have a use for" the sheathed knife introduced as Commonwealth's Exhibit 5.

Bullock moved to strike the Commonwealth's evidence, on the ground that neither of his knives fell within the purview of Code § 18.2-308(A). The Commonwealth responded: "We're not proposing that this is a switchblade or a dirk or a bayonet or anything other than a weapon of like kind."[1] The trial court partly granted the motion to strike as to the credit card knife, ruling that this was not a weapon under the statute. The court denied it as to the sheathed knife, concluding from its examination of the knife and review of case law its legality was a jury question. The trial judge's instructions to the jury mirrored this distinction—that the credit card knife was not a weapon under the statute, but that the jury was to decide whether the sheathed knife was.

The jury found Bullock guilty of possessing an illegal weapon under Code § 18.2-308.2. Bullock appeals, reiterating his argument that the sheathed knife he wore around his neck was not a weapon of like kind under the statute.

ANALYSIS

"The construction of a statute presents a question of law that we review de novo upon appeal." *Jackson v. Commonwealth*, 274 Va. 630, 633 (2007). "To the extent determining whether the evidence was sufficient to support a conviction involves interpreting the statute itself, that is a question of law which we review de novo." *Baez v. Commonwealth*, 79 Va. App. 90, 120 (2023), *aff'd*, 303 Va. 421 (2024).

---

[1] In closing argument, the Commonwealth reiterated this position.

> [I]t is a fundamental rule of statutory construction that penal statutes
> are to be strictly construed against the Commonwealth and in favor
> of a citizen's liberty. Such statutes may not be extended by
> implication; they must be applied to cases clearly described by the
> language used and the accused is entitled to the benefit of any
> reasonable doubt about the construction of a penal statute.

*Fullwood v. Commonwealth*, 279 Va. 531, 536 (2010) (citation omitted).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). Bullock concedes the essential element that the sheathed knife was a "weapon." He maintains, however, that it was not "of like kind" because its physical characteristics differed from the items enumerated in Code § 18.2-308(A).

Whether a knife's fighting qualities make it a "weapon of like kind" involves "a question of fact determined by the trier of fact according to the circumstances of the case." *Richards v. Commonwealth*, 18 Va. App. 242, 246 n.2 (1994); *see also Delcid v. Commonwealth*, 32 Va. App. 14, 17 (2000) (holding that the question whether a particular knife is a "weapon of like kind" is "a question of fact to be determined by the trier of fact"). We can overturn this factual determination only if it is "plainly wrong or without evidence to support it." Code § 8.01-680.

Although Bullock concedes that the sheathed knife was a "weapon," he maintains that it was not of like kind because its physical characteristics differed from the items enumerated in Code § 18.2-308(A). We agree. As we explained in *McMillan v. Commonwealth*, 55 Va. App. 392, 400 (2009) (en banc), when there is no evidence of "the purpose for which [the knife] was designed, or its commonly understood uses," a conviction under Code § 18.2-308.2(A) cannot stand. The record here is similarly devoid of evidence to establish the knife was "'of like kind' to a dirk or any other

weapon enumerated in Code § 18.2-308(A)." *Thompson v. Commonwealth*, 277 Va. 280, 291 (2009).[2]

## CONCLUSION

For these reasons, the circuit court's judgment is reversed.[3]

*Reversed and final judgment.*

---

[2] Bullock does not challenge the trial court's ruling on his motion to strike that "th[e] knife is designed for stabbing or fighting." The trial court described the knife, concluded that it "appears to be well designed and well suited for that purpose." The Commonwealth seemingly relies on the trial judge's "observation" in ruling on the motion to strike to argue that the evidence was sufficient to prove that Bullock's knife was "of like kind." In a jury trial (such as here), however, the sufficiency of the evidence rises and falls with the evidence before the jury. A trial judge's reasoning in ruling on a motion to strike cannot serve as a basis for upholding the sufficiency of the evidence.

[3] In view of our disposition of this appeal, we do not address Bullock's remaining assignment of error challenging the trial court's amendment of his proffered jury instruction. *See Dietz v. Commonwealth*, 294 Va. 123, 134 (2017) (noting that an appellate court decides cases on "the best and narrowest grounds available" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).