Present:  Carrico, C.J., Compton, Hassell, Keenan, Koontz, and
Kinser, JJ., and Poff, Senior Justice

BRIAN E. WOOD, BY AND THROUGH
HIS NEXT FRIENDS, LARRY E. WOOD
AND LAVONNE W. WOOD

                             OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.   Record No. 970727                    January 9, 1998

HENRY COUNTY PUBLIC SCHOOLS

               FROM THE CIRCUIT COURT OF HENRY COUNTY
                       David V. Williams, Judge


                                I.

     The primary issue we consider in this appeal is whether a

public school division, which expelled a student who violated the

school division's code of student conduct, violated that

student's due process rights guaranteed by the Fourteenth

Amendment to the United States Constitution.[1]

                                II.

     In March 1996, Brian Edmond Wood, then a 10th-grade student

at Bassett High School in Henry County, went on a school-

sponsored field trip with his class to the Henry County Jail.  In

response to a sheriff deputy's inquiry whether any students had

weapons in their possession, Brian gave the deputy a pocketknife.

 The deputy gave the pocketknife to a school chaperon, and when

Brian returned to school, the chaperon took him to the assistant

principal's office.  Curtis Shelton, an assistant principal,

asked Brian "what happened" and told him to "write a brief

statement on a sheet of paper."  Brian gave a written statement

_____
     [1] The Fourteenth Amendment to the United States
Constitution states in relevant part that no state shall
"deprive any person of life, liberty, or property, without
due process of law."

that he did not intend to take the pocketknife to school, that he placed the knife in his pants pocket the night before the field trip, and that he forgot that the knife was in his pants pocket until the deputy asked if any students had any weapons.

After hearing Brian's version of the incident, Shelton suspended Brian from school for 10 days for violating the Henry County Public School Code of Student Conduct which prohibits students from possessing knives at school-sponsored events. Shelton contacted Brian's mother, by telephone, and informed her of the incident and the suspension.

On March 4, 1996, Robert C. Vogler, director of pupil personnel for the Henry County Public Schools, sent a notice to Brian's parents, Larry E. and LaVonne W. Wood, informing them that the Bassett High School administration had recommended that Brian appear before the committee for the control of school discipline "to determine if there [was] sufficient cause to recommend to the Superintendent that Brian be excluded from attending Henry County Public Schools." The notice advised Brian's parents of a hearing date and location and cited the appropriate policies in the code of student conduct.

Brian, his parents, and their attorney appeared at a hearing before the committee and presented evidence to the committee. The Woods' attorney participated in this hearing.

The committee decided to recommend to the Henry County Public School Board that Brian be expelled from school. Brian remained on suspension pending official action by the School Board. The committee informed Brian and his parents of its

decision and advised them that they had a right to appeal the committee's recommendation to J. David Martin, Superintendent of the Henry County Public Schools.

Brian appealed the recommendation of expulsion to the superintendent. During that appeal, Brian was asked to discuss the events surrounding his possession of the pocketknife, and his parents were asked if they had anything they would like to say. Brian's parents, as well as his attorney, made statements to the superintendent. By letter dated March 22, 1996, the superintendent informed the Woods that "[i]t appeared from the affidavits and testimony that the incident of possession of a weapon on a field trip from Bassett High School did constitute sufficient cause for action beyond the disciplinary options used by the school. It is accordingly decided that the recommendation of an expulsion be made to the full [S]chool [B]oard and that Brian remain suspended from the Henry County Public Schools pending official action by the [S]chool [B]oard." The superintendent also informed the Woods that Brian had a right to a hearing before the School Board and that they could be represented by an attorney. The superintendent also notified the Woods of the date, time, and location of the hearing.

The School Board conducted an evidentiary hearing to consider the superintendent's recommendation. The superintendent presented evidence, and the Woods' attorney cross-examined him. Mr. Wood testified at the hearing, and the Woods' lawyer argued on behalf of Brian. The School Board considered the evidence and argument of the Woods' attorney, and found that Brian had

violated the school division's policy which prohibits students from possessing knives at school-sponsored events as well as Code §§ 22.1-277.01, 18.2-308, and -308.1 which prohibit students from possessing firearms or weapons on school property. The School Board, among other things, voted to expel Brian.[2]

### III.

Brian, by and through his next friends, Larry and LaVonne Wood, filed a petition pursuant to Code § 22.1-87[3] against the Henry County Public Schools. Brian alleged that the Henry County Public Schools had violated his Fourteenth Amendment right to due process when he was suspended and subsequently expelled from the

---

[2] The School Board's decision states: "[T]he Board accept[ed] the recommendation of the Superintendent that the student be expelled for 365 days provided that the student may return for the [19]96-[19]97 school year if he remains of good behavior and provided further that, number one; the student be provided homebound instruction for the remainder of this school year and number two; that if the student is of good behavior and does not violate the Code of Student [C]onduct for the remainder of the 365 day period, that this action of the [School] Board and the original suspension be expunged from the student's record, and number three; that if the student violates the Code of Student Conduct during the 365 day period, he will be expelled for the remainder of the original 365 day period."

[3] Code § 22.1-87 states: "Any parent, custodian, or legal guardian of a pupil attending the public schools in a school division who is aggrieved by an action of the school board may, within thirty days after such action, petition the circuit court having jurisdiction in the school division to review the action of the school board. Such review shall proceed upon the petition, the minutes of the meeting at which the school board's action was taken, the orders, if any, of the school board, an attested copy of the transcript, if any, of any hearing before the school board, and any other evidence found relevant to the issues on appeal by the court. The action of the school board shall be sustained unless the school board exceeded its authority, acted arbitrarily or capriciously, or abused its discretion."

Henry County Public Schools. The school division filed an answer denying that it had violated Brian's due process rights. The trial court considered evidence, legal memoranda, and argument of counsel and, on August 5, 1996, entered a judgment which set aside Brian's expulsion because the School Board had erroneously decided that a pocketknife was a firearm within the intendment of Code §§ 22.1-277.01, 18.2-308(A), and -308.1. The trial court did not disturb the School Board's finding that Brian had violated the Code of Student Conduct which prohibits students from bringing knives to school-sponsored events.

The court remanded the proceeding to the School Board for reconsideration of punishment. The School Board convened to reconsider Brian's punishment without notice to Brian or his parents and decided that it would not change Brian's punishment. The trial court entered a final judgment, Brian appeals, and the school division assigns cross-error.

IV.

A.

Brian argues that the school division deprived him of his due process rights on numerous occasions.[4] First, Brian contends that he was deprived of his due process rights when the assistant principal initially suspended him. Next, Brian claims that his due process rights were violated because, he says, he was not

_____

[4] Code §§ 22.1-277 and 22.1-277.01 confer certain statutory rights upon a student subject to expulsion or suspension by a school board. Brian does not contend, however, that the school division contravened his statutory rights.

given sufficient notice of the hearing before the disciplinary committee.  Brian also asserts that his appeal from the decision of the disciplinary committee to the superintendent of schools did not comport with due process.  We find no merit in these contentions.

The Commonwealth has conferred upon school boards, which are created pursuant to art. VIII, § 7, of the Constitution of Virginia, broad authority to prescribe and enforce standards of conduct in schools.  This authority, however, must be exercised consistently with constitutional safeguards.

The United States Supreme Court articulated the principles that we must apply in this appeal in Goss v. Lopez, 419 U.S. 565, 574 (1974).  There, the Court stated that a

> "State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."

Thus, a student charged with misconduct may not be suspended from a public school without the minimum procedures required by the due process clause.  Explaining the requirements of due process, the Supreme Court noted:

> "'The fundamental requisite of due process of law is the opportunity to be heard,' Grannis v. Ordean, 234 U.S. 385, 394 (1914), a right that 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest.' . . . At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing.  'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'"  Id. at 579 (citation omitted).

The Supreme Court also held in Goss that
"[s]tudents facing temporary suspension have interests
qualifying for protection of the Due Process Clause,
and due process requires, in connection with a
suspension of 10 days or less, that the student be
given oral or written notice of the charges against him
and, if he denies them, an explanation of the evidence
the authorities have and an opportunity to present his
side of the story. The Clause requires at least these
rudimentary precautions against unfair or mistaken
findings of misconduct and arbitrary exclusion from
school." Id. at 581.

Applying these principles, we hold that the Henry County
Public School division did not abridge Brian's due process
rights. The assistant principal, who initially suspended Brian,
gave him an opportunity to explain his version of the facts, and
Brian was informed of "what he is accused of doing and . . . the
basis of the accusation." Id. at 582.

The committee for the control of school discipline also
afforded Brian due process. That committee forwarded a notice to
Brian's parents that he committed a "severe breach of the conduct
code at Bassett High School" and referred to a policy which
states that a student shall not possess, handle, or transmit a
knife while at school or during an off-site school-sponsored
activity. Without question, Brian, his parents, and their
attorney knew the reasons Brian had been suspended and that the
committee was conducting a hearing to determine whether Brian
should be expelled. Additionally, as we have already mentioned,
Brian, his parents, and their attorney participated during the
hearing before the committee.

The superintendent did not abridge Brian's due process

rights.  The Woods requested an appeal to the superintendent "due to a weapons violation."  The Woods were informed of the date and time for this appeal, and Brian, his parents, and their attorney were given an opportunity to make whatever statements they deemed appropriate.

B.

Brian argues that even if the school division accorded him his procedural due process rights, the school division should not be permitted to promulgate policies that require suspension or expulsion of students who possess knives on school property.  We find no merit in this contention.  Neither the school division's policies nor the Federal Gun-Free School Act with which Code § 22.1-277.01(A) complies, divests the School Board of its authority to impose a punishment less severe than expulsion.  Moreover, a school division is permitted to suspend or expel a student for possession of a dangerous weapon on school property or at school-sponsored events provided that the school division does not abridge a student's constitutional or statutory rights.  See Mitchell v. Board of Trustees of Oxford, 625 F.2d 660, 664-65 (5th Cir. 1980); Kolesnick v. Omaha Pub. Sch. Dist., 558 N.W.2d 807, 813 (Neb. 1997).  In this instance, Brian fails to identify any statutory or constitutional right that the Henry County Public School division has purportedly violated.

C.

As we have already stated, the trial court set aside the School Board's initial decision to expel Brian and remanded the proceeding, by an order dated August 5, 1996, to the School Board

because the School Board erroneously concluded that Brian's knife was a firearm under Code §§ 22.1-277.01, 18.2-308.1, and -308(A). Brian argues that the school division violated his due process rights because, upon remand, the School Board failed to give him notice and an opportunity to be present at the hearing.

After the trial court remanded this proceeding, the School Board decided it would expel Brian, and the trial court entered a final judgment which dismissed the proceeding. Brian's counsel objected to this final judgment "for the reason stated on the order dated August 5, 1996," which was the order that remanded the matter to the School Board. Brian's objections to the August 5, 1996 order did not, and could not, contain an objection on the basis that he was not given adequate notice of the School Board's hearing on remand because the date of that hearing had not yet been fixed. Brian did not make any objection in the record to the School Board's failure to give him notice of the second hearing. Accordingly, this argument is procedurally barred. Rule 5:25.[5]

V.

As previously noted, the School Board concluded at Brian's

---

[5] Brian raises the following arguments that we do not consider because he failed to raise them in the trial court, Rule 5:25: Brian was denied due process because Shelton was a member of the committee for the control of school discipline; the School Board was required to provide Brian a more expeditious review of his suspension and subsequent expulsion; Brian was excluded from the educational process because he did not receive any homebound instruction until after the School Board's hearing, more than 30 days after his initial hearing; and the trial court lacked the authority to remand this case to the School Board.

first hearing that he had violated, among other things, Code § 22.1-277.01, which prohibits a student from possessing a firearm on school property. The trial court held that the School Board misapplied Code § 22.1-277.01, and the school division assigns cross-error to this determination. Essentially, the school division asserts that a "pocketknife" is a "firearm" within the meaning of Code §§ 22.1-277.01, 18.2-308, and -308.1. We disagree.

> Code § 22.1-277.01(A) states in part:
> "In compliance with the federal Improving America's Schools Act of 1994 (Part F -- "Gun-Free Schools Act of 1994"), a school board shall expel from school attendance for a period of not less than one year any student whom such school board has determined, . . . to have brought a firearm onto school property or to a school-sponsored activity as prohibited by § 18.2-308.1 . . . ."

Code § 18.2-308.1 states in part:
"If any person has in his possession any . . . weapon . . . designated in subsection A of § 18.2-308 upon (i) the property of any public . . . elementary, middle or high school, including buildings and grounds, (ii) that portion of any property open to the public used for school-sponsored functions or extracurricular activities while such functions or activities are taking place, or (iii) any school bus owned or operated by any such school, he shall be guilty of a Class 1 misdemeanor."

Code § 18.2-308(A) defines the word "weapon" to include, <u>inter alia</u>, "any dirk, bowie knife, switchblade knife, ballistic knife . . . or . . . any weapon of like kind."

Contrary to the school division's assertion, the pocketknife that Brian had in his possession does not constitute a firearm within the meaning of these statutes. We stated in <u>Martin</u> v. <u>Commonwealth</u>, 224 Va.

298, 301-02, 295 S.E.2d 890, 892-93 (1982):  "Under the rule of ejusdem generis, when a particular class of persons or things is enumerated in a statute and general words follow, the general words are to be restricted in their meaning to a sense analogous to the less general, particular words.  East Coast Freight Lines v. City of Richmond, 194 Va. 517, 525, 74 S.E.2d 283, 288 (1953); Rockingham Bureau v. Harrisonburg, 171 Va. 339, 344, 198 S.E. 908, 911 (1938).  Likewise, according to the maxim noscitur a sociis (associated words) when general and specific words are grouped, the general words are limited by the specific and will be construed to embrace only objects similar in nature to those things identified by the specific words. Commonwealth v. United Airlines, 219 Va. 374, 389, 248 S.E.2d 124, 132-33 (1978); Hensley v. City of Norfolk, 216 Va. 369, 374, n.5, 218 S.E.2d 735, 740, n.5 (1975)."

Applying these principles, we hold that Brian's pocketknife is not a firearm because a pocketknife is neither a dirk, bowie knife, switchblade knife, ballistic knife, nor a weapon of like kind.[6]

---

[6] A "dirk" is defined as "a long straight-bladed dagger formerly carried [especially] by the Scottish Highlanders[,] 2.  a short sword formerly worn by British junior naval officers."  Webster's Third New International Dictionary, 642 (1981).  A "bowie knife" is defined as "a large hunting knife adapted [especially] for knife-fighting and common in western frontier regions and having a guarded handle and a strong single-edge blade typically 10 to 15 inches long with its

Accordingly, we will affirm the judgment of the trial court.

<u>Affirmed</u>.

---

back straight for most of its length and then curving concavely and sometimes in a sharpened edge to the point." <u>Id.</u> at 262.  A "switchblade knife" is defined as "a pocketknife having the blade spring-operated so that pressure on a release catch causes it to fly open."  <u>Id.</u> at 2314.  A "ballistic knife" is defined as "any knife with a detachable blade that is propelled by a spring-operated mechanism." Code § 18.2-308(N).