COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Humphreys and Clements
Argued at Chesapeake, Virginia


JOSEPH GOODWIN, III

MEMORANDUM OPINION[*] BY
v.     Record No. 2006-04-1     JUDGE JAMES W. BENTON, JR.
                                                                JULY 12, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Charles D. Griffith, Jr., Judge

Fay F. Spence, Public Defender for the City of Newport News
(Office of the Public Defender, on brief), for appellant.

Deana A. Malek, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


The trial judge convicted Joseph Goodwin, III, for carrying a concealed knife in violation of

Code § 18.2-308.2. Goodwin contends the trial judge erred because the knife was not prohibited by

the statute. We agree and reverse the conviction.

I.

The basic facts are undisputed. A police officer went to a restaurant's parking lot to assist

paramedics who were treating a man bleeding from a head wound. The injured man told the officer

he had been hit with a 2-by-4 board. A person who apparently witnessed the attack upon the injured

man pointed to Joseph Goodwin, III, standing across the street. When the police officer approached

Goodwin, he noticed bloodstains on Goodwin's pants. As the officer talked to Goodwin and

prepared to frisk him for weapons, he asked Goodwin if he had any sharp objects on his person.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Goodwin said he had a knife in his pocket, which the officer retrieved. The officer learned that

Goodwin was a convicted felon and arrested him for carrying a concealed weapon in violation of

Code § 18.2-308.2.

The officer described the knife as follows:

> It's approximately a steak knife, approximately eight to ten
> inches long in length, approximately six-inch blade, wooden
> handle, non-serrated.

> *       *       *       *       *       *       *

> The dull side is straight all the way to the point it's rounded,
> kind of convex direction. It's sharp all the way to the point. The
> tip appears to be a little bit broken off.

He further described the blade as having "a pretty sharp point" and identified it when the

prosecutor offered it as an exhibit.

At the conclusion of the evidence, the trial judge examined the knife and convicted

Goodwin of possessing a concealed weapon in violation of Code § 18.2-308.2.

## II.

Code § 18.2-308.2 provides that "[i]t shall be unlawful for [a convicted felon] . . . to

knowingly and intentionally carry about his person, hidden from common observation, any

weapon described in subsection A of [Code] § 18.2-308." Pertinent to this case, Code

§ 18.2-308 describes "any dirk, bowie knife, switchblade knife, ballistic knife, machete, razor, . .

. or . . . any weapon of like kind of those enumerated in this subsection." Thus, although the

statute designates specific types of knives and knives "of like kind," it "does not prohibit

generally the carrying of knives hidden from common observation." Ricks v. Commonwealth,

27 Va. App. 442, 444, 499 S.E.2d 575, 576 (1998).

Interpreting Code § 18.2-308(A), the Supreme Court held that "a pocketknife is neither a

dirk, bowie knife, switchblade knife, ballistic knife, nor a weapon of like kind." Wood v. Henry

County Public Schools, 255 Va. 85, 94-95, 495 S.E.2d 255, 261 (1998).  The Court reached this

conclusion by applying the following principles of statutory interpretation:

> "Under the rule of *ejusdem generis*, when a particular class of
> persons or things is enumerated in a statute and general words
> follow, the general words are to be restricted in their meaning to a
> sense analogous to the less general, particular words.  Likewise,
> according to the maxim *noscitur a sociis* (associated words) when
> general and specific words are grouped, the general words are
> limited by the specific and will be construed to embrace only
> objects similar in nature to those things identified by the specific
> words."

Id. (citations omitted).  Interpreting the same statute, we have also held that "the physical

characteristics of the knife determine whether the knife is a weapon contemplated by the statute."

Ricks, 27 Va. App. at 445, 499 S.E.2d at 576.

The knife entered into the record was measured against a ruler; it is ten inches long, and

has a blade length of five and a half inches.  The officer described the knife to be a steak knife.

The prosecutor argued the knife "is of a like kind weapon to a dirk."  The trial judge agreed with

the Commonwealth and found that the knife has a "sharp end on the bottom edge, extremely

sharp on the bottom end and extreme point that would certainly cut straight through flesh if

propelled with any type of force."  This is not a description of physical characteristics that is

sufficient to bring the knife within the statutory definition of prohibited knives or of a "weapon

of like kind of those enumerated" in Code § 18.2-308(A).

> A "dirk" is defined as "a long straight-bladed dagger formerly
> carried [especially] by the Scottish Highlanders[,] 2. a short sword
> formerly worn by British junior naval officers."  Webster's Third
> New International Dictionary, 642 (1981).  A "bowie knife" is
> defined as "a large hunting knife adapted [especially] for
> knife-fighting and common in western frontier regions and having
> a guarded handle and a strong single-edge blade typically 10 to 15
> inches long with its back straight for most of its length and then
> curving concavely and sometimes in a sharpened edge to the
> point."  Id. at 262.  A "switchblade knife" is defined as "a
> pocketknife having the blade spring-operated so that pressure on a
> release catch causes it to fly open."  Id. at 2314.  A "ballistic knife"

is defined as "any knife with a detachable blade that is propelled by a spring-operated mechanism." Code § 18.2-308(N).

Wood, 255 Va. at 95 n.6, 495 S.E.2d at 261 n.6.[1]

In Ricks, we held that a knife that "has the appearance and characteristics of an ordinary household steak knife" does not satisfy the definition of the knives prohibited by Code § 18.2-308.2. Ricks, 27 Va. App. at 445, 499 S.E.2d at 576. Indeed, in view of the statutory description of the knives, we noted in Richards v. Commonwealth, 18 Va. App. 242, 246 n.2, 443 S.E.2d 177, 179 n.2 (1994), that the legislature "intend[ed] to exclude . . . innocuous household . . . knives."

Our decision in Delcid v. Commonwealth, 32 Va. App. 14, 526 S.E.2d 273 (2000), does not require a different result. It did not involve a common kitchen steak knife, as did Ricks and this case. Instead, the Delcid decision concerned "a butterfly knife," which has a blade concealed within "a two part hinged handle" that can be "flip[ped] . . . open, leaving the blade exposed and locked, thus creating a straight-bladed knife." 32 Va. App. at 17, 526 S.E.2d at 274.

---

[1] Consistent with this definition, we earlier had defined the terms as follows:

> The terms "dirk" and "bowie knife" are not defined by the statute, nor has any appellate decision in this Commonwealth clarified the difference. We assume that the two terms have their usual meaning. A "dirk" or weapon of like kind is any stabbing weapon having two sharp edges and a point, including daggers, short swords and stilettos. A "bowie knife" or weapon of like kind is any stabbing weapon having a single sharp edge, a dull or serrated flat edge and a point, such as a hunting knife, a fishing knife or a survivalist's knife. It is generally agreed that in using such terms, legislatures intend to exclude from concealed weapons statutes innocuous household and industrial knives which may be carried for legitimate purposes.

Richards v. Commonwealth, 18 Va. App. 242, 246 n.2, 443 S.E.2d 177, 179 n.2 (1994). Given its ordinary meaning, a dirk is a straight-bladed double-edged knife, historically designed as a military weapon. Goodwin carried a single-edged steak knife. It would strain the holdings of Wood and Ricks to define a steak knife as a dirk.

In addition, the circumstances surrounding Goodwin's possession of the knife, a factor that Delcid mentions, id. at 18, 526 S.E.2d at 275, does not support the conclusion that it was in fact intended as a weapon.  The evidence proved the injured man was hit with a 2-by-4 board, and it does not prove Goodwin used the knife in any manner.

The knife that Goodwin possessed does not fall within the prohibited class of knives.  True, it has a sharp point, a sharp edge, and a sturdy blade.  But so do many pocketknives, which Wood held to be excluded from the coverage of this statute.  A properly maintained knife is sharp and intrinsically is capable of being used for either cutting or stabbing.  However, as explained in Ricks and Wood, simply because a knife is sharp does not mean it is included within the statutory class prescribed by Code § 18.2-308.2.

For these reasons, we reverse the conviction.

Reversed.