COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Causey and White
Argued by videoconference


SENTRY FORCE SECURITY, LLC

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1405-24-4                      JUDGE RANDOLPH A. BEALES
                                                    JANUARY 27, 2026

JAMES R. BARRERA, JR., ET AL.


            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                              Lisa Kemler, Judge

            John M. Remy (Matthew E. Kreiser; Mary C. Mullen; Jackson
            Lewis, P.C., on briefs), for appellant.

            J. Chapman Petersen (Christopher T. Robertson; Chap Petersen &
            Associates, PLC, on brief), for appellees.


        Sentry Force Security, LLC ("Sentry Force") appeals from the judgment of the Circuit Court

of the City of Alexandria overruling Sentry Force's plea in bar to the counterclaim filed by the

defendants—James R. Barrera, Jr. and New District Security ("NDS").  By overruling Sentry

Force's plea in bar, the circuit court determined that a "Non-Disclosure and Restrictive Covenant

Agreement" signed between Barrera and Sentry Force was "subject to Va. Code § 40.1-28.7:8."  On

appeal to this Court, Sentry Force challenges the circuit court's decision overruling the plea in bar

on the grounds that the circuit court "misinterpreted and/or misapplied Va. Code § 40.1-28.7:8."

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

# I. Background[1]

Appellant Sentry Force is a self-described "private security firm that specializes in providing armed and unarmed uniformed security services to commercial and government customers throughout the District of Columbia, Maryland, and Virginia (DMV) area." On or around May 2021, Sentry Force hired James Barrera as an Account Manager. As an employee of Sentry Force, Barrera signed a document titled "Non-Disclosure and Restrictive Covenant Agreement." Among other things, the Agreement stated the following:

> **Non Solicitation**. For the duration of no less than the two (2) year[s] immediately following the end of Employee's relationship with Company, the Employee shall not, directly or indirectly:
>
> a. Hire or attempt to hire any employee or personnel of the Company, or solicit or induce or assist in any manner any Company representative, employee or independent contractor to leave his or her job for any reason whatsoever, without the prior written consent of Company.
>
> b. Influence or attempt to influence, convince, coerce, or direct a Client to obtain services which are competitive with Company, from anyone other than Company. Company recognizes that general advertisements, mailings to certain zip codes and other general marketing activities are not considered "solicitation."

(Emphasis in original).

---

[1] When "no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)). A plea in bar "shortens the litigation by reducing it to a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996). "The party asserting a plea in bar carries the burden of proof" on that distinct issue of fact. *Cooper Indus., Inc. v. Melendez*, 260 Va. 578, 594 (2000) (citing *Tomlin*, 251 Va. at 480). Thus, when considering the pleadings, "the facts stated in the plaintiff's motion for judgment are deemed true." *Lostrangio*, 261 Va. at 497 (citing *Tomlin*, 251 Va. at 480). *See also Moore v. Jefferson Hosp., Inc.*, 208 Va. 438, 440 (1967) (describing a motion for judgment as a document that "set[s] forth the essential facts" of "the judgment to be asked" and "state[s] a cause of action"). Therefore, because Sentry Force filed the plea in bar at issue in this case, this Court must treat the facts in Barrera's *counterclaim* as true.

According to Sentry Force, Barrera's job responsibilities as an Account Manager included (but were not limited to) "interacting with Sentry Force's customers, managing customer accounts and relationships, gathering customer feedback on Sentry Force's staff performance," and "drafting summary reports of customer accounts for Sentry Force's senior management review." His "primary job responsibilities,"—says Sentry Force—were "[m]anaging Sentry Force's customer accounts and staffing personnel to Sentry Force's contracts."

In September 2022, Sentry Force demoted Barrera to Office Manager. Sentry Force describes the demotion as reducing Barrera's "title, responsibilities, and pay." This new role was "a significant departure from Mr. Barrera's responsibilities as Account Manager" because Barrera "was no longer working directly with Sentry Force's clients and was relegated to a 'back office' position." Sentry Force demoted Barrera after he allegedly "exhibited a rapid deterioration in his job performance." In particular, Sentry Force blamed Barrera for the loss of a customer account after Barrera allegedly failed to tell a security guard who had "gotten into a verbal altercation with a high-ranking member" of one of Sentry Force's clients that the security guard could no longer work on the client's property.

Sentry Force claims that, sometime in August 2023, they discovered that Barrera had established his own private security company, named New District Security, while he was still employed with Sentry Force. Sentry Force alleges that they also learned "around this time" that Barrera "had solicited several of its employees for corresponding employment with New District Security." In addition, Sentry Force claims that Barrera "formed and registered" New District Security in or around January 2022. Sentry Force terminated Barrera in August 2023.

Sentry Force started "an internal investigation" after Barrera's termination. According to Sentry Force, that investigation revealed that Barrera "had diverted a business opportunity with

one of Sentry Force's customers, Brightview, to New District Security while Mr. Barrera was still employed with Sentry Force." Sentry Force claims that Barrera, who was "managing Sentry Force's Brightview Contract performance," worked closely with Brightview's "point-of-contact for Sentry Force." Through his interactions with Brightview, Barrera seemingly became "intimately familiar with the Brightview Contract, its terms, and Sentry Force's performance." Sentry Force says that Barrera "used his knowledge of Sentry Force's confidential and [p]roprietary [i]nformation, including Sentry Force's pricing, to solicit [Brightview's point-of-contact] to contract with New District Security during his employment with Sentry Force" and that Brightview ultimately "executed a contract with New District Security, instead of Sentry Force."

Sentry Force similarly claims that Barrera "used his knowledge of Sentry Force's pricing to undercut" a cost proposal that Sentry Force provided to another potential client named AMMS. After "AMMS contacted Sentry Force for a quote to provide private security services," Sentry Force says that Barrera "used his knowledge of Sentry Force's AMMS cost proposal to solicit AMMS to contract with New District Security." AMMS—allegedly due to Barrera's interference—then "executed a contract with New District Security, instead of Sentry Force."[2] According to Sentry Force, Brightview and AMMS are both still clients of New District Security.

Sentry Force also asserts that Barrera "conspired with New District Security to solicit Sentry Force's employees to leave their employment with Sentry Force for employment with

---

[2] Sentry Force asserts that AMMS asked Sentry Force for a quote "[o]n or around July 2022" to "provide private security services." Barrera was employed at Sentry Force from May 2021 to August 2023, and Sentry Force claims that he had knowledge of proprietary and confidential information that enabled him to successfully solicit AMMS for its business. Thus, Sentry Force alleges that Barrera solicited AMMS for its business for New District Security, his own company, during the time of his employment with Sentry Force.

New District Security."  More specifically, Sentry Force claims that Barrera solicited "Sentry Force's Project Manager, Anthony Swartz" as well as "one of Sentry Force's armed security officers, Daniel Girmay."[3]  Girmay allegedly resigned from his position with Sentry Force in August 2023—at approximately the same time that Sentry Force terminated Barrera.

In addition, Sentry Force claims that Barrera "would use rewards offered by the Company's vendors, earned via Company transactions, for his personal benefit and for the benefit of New District Security."  They also claim that Barrera "would take and use rewards from the Company's vendors (e.g., Enterprise Rent-A-Car) for his personal benefit and for the benefit of New District Security."  He also seemingly "used his Sentry Force-provided vehicle for personal matters and to perform business for New District Security" including "to conduct site visits for New District Security, supervise New District Security's personnel, and to meet with New District Security's clients all the while Mr. Barrera was supposed to be working for Sentry Force."

Sentry Force similarly claims that Barrera used his position as a Sentry Force Office Manager "to promote his personal best interests to the detriment of Sentry Force."  Sentry Force specifically alleges that in one instance, Barrera bought ballistic vests for Sentry Force from "a personal acquaintance" of his but that he paid "approximately $200.00 more per ballistic vest over the price for the same vest that could have been purchased directly from the manufacturer."  Sentry Force says that Barrera paid more for the vests because his personal acquaintance "would pay Mr. Barrera a monetary sum for purchasing the ballistic vests through his company as opposed to purchasing the same ballistic vest directly from the manufacturer."

---

[3] Aside from these two specific employees, Sentry Force also generally alleges that "while 'on the clock' at Sentry Force, Mr. Barrera openly solicited many of Sentry Force's employees and business associates to make a financial investment in New District Security and/or provide New District Security with financial assistance."

On August 31, 2023, Sentry Force, through counsel, sent Barrera a letter claiming that Barrera was a "trusted management-level employee" who owed a "fiduciary duty of loyalty" to Sentry Force because Barrera had "authority to spend company funds on the company's behalf." Sentry Force also asserted that Barrera had breached his duty of loyalty by (1) "secretly operati[ing] a competing security business"; (2) "solicit[ing] a Sentry employee to resign from Sentry" who then "resigned to join your competitive security firm"; (3) "solicit[ing] another Sentry manager to provide you a loan for your security firm"; and (4) "t[aking] a corporate opportunity that belonged to Sentry for yourself and are now providing security services at an apartment complex, which you knew is the type of work Sentry provides as its business." Sentry Force stated that it had suffered damages as a result of Barrera's actions and that it was "entitled to recoup from you all of your compensation from Sentry dating back to your initial breach of duty." Sentry Force also planned "to conduct an audit of your purchasing at Sentry to determine if we are able to locate all of the items you purchased with Sentry's funds or if those items might be used for your current business." Finally, Sentry Force stated it was "prepared to seek punitive damages against" Barrera and "recovery of its attorneys' fees" but left open the possibility of "resolv[ing] this matter without litigation if it can be accomplished quickly."

On November 7, 2023, Barrera responded to Sentry Force with a letter of his own. Through counsel, Barrera "denie[d] that he owes any ongoing obligations to Sentry under any non-compete or non-solicitation agreements he may have had with Sentry as he was paid below the threshold for such agreements to be enforceable in Virginia under Va. Code § 40.1-28.7:8." That section of the Virginia Code states the following:

A. As used in this section:

"Covenant not to compete" means a covenant or agreement, including a provision of a contract of employment, between an employer and employee that restrains, prohibits, or otherwise restricts an individual's ability, following the termination of the

individual's employment, to compete with his former employer. A "covenant not to compete" shall not restrict an employee from providing a service to a customer or client of the employer if the employee does not initiate contact with or solicit the customer or client.

"Low-wage employee" means an employee whose average weekly earnings, calculated by dividing the employee's earnings during the period of 52 weeks immediately preceding the date of termination of employment by 52, or if an employee worked fewer than 52 weeks, by the number of weeks that the employee was actually paid during the 52-week period, are less than the average weekly wage of the Commonwealth as determined pursuant to subsection B of § 65.2-500 . . . .[4]

B. No employer shall enter into, enforce, or threaten to enforce a covenant not to compete with any low-wage employee.

E. Any employer that violates the provisions of subsection B as determined by the Commissioner shall be subject to a civil penalty of $10,000 for each violation. Civil penalties owed under this subsection shall be paid to the Commissioner for deposit in the general fund.

Code § 40.1-28.7:8 (2020 version). Barrera's counsel claimed in the letter that Sentry Force could not enforce the Agreement that Barrera signed as an employee of Sentry Force because, under Code § 40.1-28.7:8, Barrera was "a low-wage employee and was hardly the 'management level' employee as you allege." Barrera's counsel also stated that if "Sentry brings an action to enforce any non-compete agreement for Mr. Barrera please be aware we intend to file a counterclaim to void that agreement, seek liquidated damages, seek actual damages, and to recover the attorney's fees and costs my client incurs in such an action."

---

[4] On brief, Barrera's counsel claims that "[d]uring all relevant times of his employment, Mr. Barrera earned less than the average wage of a Virginia employee." Thus, Barrera asserts in his counterclaim that "he is identified as a 'low-wage employee' under Virginia Law." However, whether Barrera is a "low-wage employee" under Virginia law is not a question before this Court. Indeed, on brief, Barrera's counsel notes, "The trial court has thus far only made a threshold determination regarding the Counterclaim, i.e. that the Agreement is a 'covenant not to compete' as defined by Va. Code § 40.1-28.7:8, should Mr. Barrera establish he is a 'low-wage' employee." Furthermore, during oral argument before this Court, counsel for Sentry Force stated that they did not dispute for purposes of this appeal that Barrera is a low-wage employee as defined in Va. Code § 40.1-28.7:8(A).

- 7 -

On December 13, 2023, Sentry Force filed a 10-count complaint against Barrera and New District Security in the Circuit Court for the City of Alexandria. Against Barrera, Sentry Force alleged breach of contract by disclosure of proprietary information, breach of contract by use of proprietary information, breach of contract by solicitation of Sentry Force's customers and employees, and breach of fiduciary duty of loyalty. Against New District Security, Sentry Force alleged aiding and abetting breach of fiduciary duty of loyalty and tortious interference with contract. Against both defendants, Sentry Force alleged violation of the Virginia Business Conspiracy Act, common law conspiracy, and misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act.

On January 22, 2024, Barrera and New District Security filed an answer to Sentry Force's complaint that denied nearly all of the facts contained in the complaint. The answer included a counterclaim against Sentry Force for Sentry Force's alleged violation of Code § 40.1-28.7:8. According to the counterclaim, "Barrera did not manage anyone" in his role as Office Manager "and his duties were almost entirely administrative." The counterclaim also stated, "When he was demoted, Barrera's pay was reduced to a rate of around $50,000 per year" which would make him "a 'low-wage employee' under Virginia Law" because he "was compensated less than $69,836 per year." Barrera's counsel requested injunctive relief against Sentry Force to prevent them from pursuing a claim against Barrera to enforce the contract that Barrera signed with Sentry Force. In addition, Barrera's counsel requested compensatory damages in the amount of $100,000, "[a]ny lost income to Barrera from Barrera's current employer incurred as a result of Sentry's threats and efforts to enforce the non-compete provision," "[l]iquidated damages as permitted by Virginia law," and attorney fees.

In response, Sentry Force filed a plea in bar on May 3, 2024 claiming that Barrera's contract "does not contain an unenforceable 'covenant not to compete'" under Code

§ 40.1-28.7:8.  The circuit court overruled Sentry Force's plea in bar, and Sentry Force now appeals to this Court on an interlocutory basis in a petition for appeal that this Court granted.[5]

## II. ANALYSIS

### A. Code § 40.1-28.7:8 and the Prohibition Against Soliciting the Former Employer's Customers

On appeal to this Court, Sentry Force argues, "The Circuit Court erred in overruling Sentry Force's Plea in Bar to Mr. Barrera's Counterclaim because it misinterpreted and/or misapplied Va. Code § 40.1-28.7:8 and erroneously held that the Agreement's covenant prohibiting Mr. Barrera from directly soliciting Sentry Force's customers following the end of his employment is subject to the Statute."  More specifically, Sentry Force claims that the circuit court "erred in interpreting the Statute's language because" Code § 40.1-28.7:8(A) "allows employers to prohibit their former employees from directly soliciting their customers."  The parties focus their disagreement especially on the second sentence of subsection A of Code § 40.1-28.7:8, as discussed *infra*.

"Issues of statutory construction are questions of law which we review de novo."  *McKee Foods Corp. v. County of Augusta*, 297 Va. 482, 495 (2019).  The Supreme Court has consistently stated, "The primary purpose of statutory interpretation 'is to ascertain and give effect to legislative intent.'"  *Botkin v. Commonwealth*, 296 Va. 309, 314 (2018) (quoting *Brown v. Commonwealth*, 284 Va. 538, 542 (2012)).  "Once the legislature has acted, the role of the judiciary 'is the narrow one of determining what [the legislature] meant by the words it used in

---

[5] While this case is being heard on an interlocutory basis, the parties in this case requested several extensions or continuances.  First, Sentry Force filed a "motion for extension of time to file opening brief," to which Barrera consented.  This Court granted that request.  Next, Sentry Force filed a "motion for extension of time to file reply brief," to which Barrera again consented.  This Court again granted that unopposed request as well.  Finally, Sentry Force requested a continuance of oral argument, to which Barrera also consented.  Once more, this Court granted the extension to which the parties had jointly agreed.

the statute.'" *Dionne v. Se. Foam Converting & Packaging, Inc.*, 240 Va. 297, 304 (1990) (alteration in original) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 318 (1980)).

"If language is clear and unambiguous, there is no need for construction by the court; the plain meaning and intent of the enactment will be given it." *Botkin*, 296 Va. at 314 (quoting *Brown*, 284 Va. at 543). "Therefore, when the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning." *Brown v. Lukhard*, 229 Va. 316, 321 (1985). Furthermore, when "the language of the statute 'is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.'" *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (quoting *Kozmina v. Commonwealth*, 281 Va. 347, 349-50 (2011)).

Here, Sentry Force challenges the application of Code § 40.1-28.7:8 to the Agreement signed by Barrera when he was a Sentry Force employee. Code § 40.1-28.7:8(B) states, "No employer shall enter into, enforce, or threaten to enforce a covenant not to compete with any low-wage employee." Code § 40.1-28.7:8(B). The statute also defines the term "covenant not to compete" as:

> A. As used in this section:
>
> "Covenant not to compete" means a covenant or agreement, including a provision of a contract of employment, between an employer and employee that restrains, prohibits, or otherwise restricts an individual's ability, following the termination of the individual's employment, to compete with his former employer. A "covenant not to compete" shall not restrict an employee from providing a service to a customer or client of the employer if the employee does not initiate contact with or solicit the customer or client.

Code § 40.1-28.7:8(A).

When interpreting statutory language, Virginia courts often apply canons of statutory construction. As the Supreme Court has repeatedly stated, the "rules of statutory interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd." *Lynchburg Div. of Soc. Servs. v. Cook*, 276 Va. 465, 483 (2008) (quoting *Jones v. Conwell*, 227 Va. 176, 181 (1984)). Like the Supreme Court, "[t]his Court 'resist[s] a construction of a statute that would render part of a statute superfluous.'" *Bd. of Supervisors v. Cohn*, 296 Va. 465, 473 (2018) (second alteration in original) (quoting *Davis v. MKR Dev., LLC*, 295 Va. 488, 494 (2018)). Rather, "it is well established that every act of the legislature should be read so as to give reasonable effect to every word." *Cook*, 276 Va. at 483 (quoting *Conwell*, 227 Va. at 181). It is a "settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." *Hubbard v. Henrico Ltd. P'ship*, 255 Va. 335, 340-41 (1998) (citing *Raven Red Ash Coal Corp. v. Absher*, 153 Va. 332, 335 (1929)).

In this case, Barrera established his own private security company, New District Security. In Sentry Force's pleadings propounding its plea in bar, Sentry Force alleges that Barrera created his own company in January 2022 and that he used his new company to provide security services at an apartment complex. Barrera founded New District Security—as a competitor to Sentry Force—while he was still employed by Sentry Force, which is also a private security company that also provides services to apartment complexes. Sentry Force also claimed in its pleadings that, to support his new business—and while still working for Sentry Force, Barrera used "rewards offered by the Company's vendors, earned via Company transactions, for his personal benefit and for the benefit of New District Security," including use of "his Sentry Force-provided vehicle" to "perform business for New District Security." Specifically, Barrera would allegedly "conduct site visits for New District Security, supervise New District Security's personnel, and []

meet with New District Security's clients all the while Mr. Barrera was supposed to be working for Sentry Force."

According to Sentry Force, not only did Barrera engage in these activities—from his creation of his own security company in January 2022 until it was discovered and he was fired by Sentry Force a year and a half later in August 2023—but he also used these benefits provided to him by Sentry Force to direct Sentry Force's would-be clients to New District Security. In one instance, after a company called AMMS "contacted Sentry Force for a quote to provide private security services," Sentry Force says in its pleadings that Barrera "used his knowledge of Sentry Force's AMMS cost proposal to solicit AMMS to contract with New District Security" and that AMMS is still a client of New District Security. In another instance, Sentry Force asserts in its pleadings that Barrera "used his knowledge of Sentry Force's confidential and [p]roprietary [i]nformation, including Sentry Force's pricing," to lure away a client named Brightview from Sentry Force to New District Security and that Brightview is also still a client of New District Security, which paints a clearly disturbing situation.

If Barrera's interpretation of Code § 40.1-28.7:8 is accurate, even an employee like the completely disloyal one that Sentry Force claims Barrera to be would face no liability whatsoever—despite signing a contract not to compete—for having solicited his employer's own clients and customers while being paid to work for his employer. That same employee would be able to bring a claim under Code § 40.1-28.7:8 against that former employer who tried to stop him from soliciting the employer's customers. That employee's employer could also be required to pay "a civil penalty of $10,000" per violation along with liquidated damages, lost compensation, "and reasonable attorney fees and costs." Code § 40.1-28.7:8. Such an outcome would be absurd—and simply therefore not what the General Assembly intended to create when it enacted Code § 40.1-28.7:8. *See Taylor v. Commonwealth*, 298 Va. 336, 342 (2020) (stating

- 12 -

that "a statute should never be construed in a way that leads to *absurd results*" (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 237 (2013) (emphasis added))). It is thus no surprise that the plain language of Code § 40.1-28.7:8 actually does allow Sentry Force to protect its own customers from direct solicitation by Sentry Force's current or former employees.

As noted *supra*, Code § 40.1-28.7:8 states that an employer cannot "enter into, enforce, or threaten to enforce a covenant not to compete with any low-wage employee." Code § 40.1-28.7:8(B). Before barring employers from enforcing a "covenant not to compete," however, the statute defines that term. The first sentence of that definition is broad and includes:

> "Covenant not to compete" means a covenant or agreement, including a provision of a contract of employment, between an employer and employee that restrains, prohibits, or otherwise restricts an individual's ability, following the termination of the individual's employment, to compete with his former employer.

Code § 40.1-28.7:8(A). Considered by itself, that definition of a "covenant not to compete" would seem to include a contract between an employer and an employee that bars an employee from soliciting the customers of the employer (after the employee has left the employer). Therefore, under Code § 40.1-28.7:8(B), an employer who tried to enforce such an agreement would face civil penalties. The kind of employee that Sentry Force claims Barrera to be would thus be free to solicit his former employer's customers for his own company without fear of any consequences for doing so.

However, the definition of "covenant not to compete" in Code § 40.1-28.7:8 includes a second sentence. That sentence states:

> A "covenant not to compete" shall not restrict an employee from providing a service to a customer or client of the employer if the employee does not initiate contact with or solicit the customer or client.

Code § 40.1-28.7:8(A). This second sentence is composed of two clauses. In the first clause, the statute states that a "covenant not to compete" cannot "restrict an employee from providing a

service to a customer or client of the employer." *Id.* Again, taken by itself, this first clause would also seem to cover any agreement between an employer and employee that barred an employee from soliciting his employer's clients (after he had left the employer).

The second clause of that sentence, however, includes an important qualifier. It states that an agreement that "restrict[s] an employee from providing a service to a customer or client of the employer" is only barred "*if the employee does not initiate contact with or solicit the customer or client*." *Id.* (emphasis added). Thus, if a contract between an employer and employee only bars that employee from "providing a service to a customer or client of the employer," when that employee does initiate contact with or solicit the customer, the Agreement here is *not* barred by Code § 40.1-28.7:8 as Barrera apparently solicited Brightview (and allegedly AMMS as well). Indeed, the Agreement now before us is not barred by Code § 40.1-28.7:8 because it does not actually fall within the definition of "covenant not to compete" in Code § 40.1-28.7:8(A). Consequently, while Code § 40.1-28.7:8 bars an employer from enforcing "a covenant not to compete with any low-wage employee," an agreement that bars an employee from soliciting his former employer's clients is *not* a "covenant not to compete" (under the terms and language of this statute).

Therefore, according to the plain language of the "covenant not to compete" definition in Code § 40.1-28.7:8(A), Sentry Force can enter into agreements with its employees that bar those employees from soliciting Sentry Force's customers (once those employees leave Sentry Force). Thus, even assuming Barrera is a low-wage employee for the purposes of this interlocutory appeal (as the parties do), Barrera cannot solicit his former employer's customers for his own company.

The fact that Code § 40.1-28.7:8 allows an employer to bar its former employees from soliciting its clients becomes even more apparent when considering "the time-honored principle

- 14 -

*expressio unius est exclusio alterius*." *Miller & Rhoads Bldg. v. City of Richmond*, 292 Va. 537, 544 (2016) (quoting *Va. Dep't of Health v. NRV Real Est., LLC*, 278 Va. 181, 187 (2009)). Indeed, the Supreme Court "has recognized that ""[n]o maxim of the law is of more general or uniform application [than *expressio unius*], and it is never more applicable than in the construction and interpretation of statutes."""" *Id.* (first alteration in original) (collecting cases) (quoting *Whitehead v. Cape Henry Syndicate*, 105 Va. 463, 471 (1906)). The Supreme Court has defined *expressio unius* as, "A canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." *FFW Enters. v. Fairfax County*, 280 Va. 583, 590 n.4 (2010) (quoting *Black's Law Dictionary* 661 (9th ed. 2009)).

Again, Code § 40.1-28.7:8 states that an employer cannot enter into a contract with its employees that stops them from providing services to the employer's clients if the employer's clients approach the employee for services. Code § 40.1-28.7:8(A). However, because Code § 40.1-28.7:8 makes a contract not to compete unenforceable when an employee does not solicit his employer's clients, it therefore allows an employer to enforce a contract not to compete against an employee who *does* solicit his employer's clients. Thus, applying the *expressio unius* canon to Code § 40.1-28.7:8, the General Assembly gave employers the ability to enforce agreements that stop their employees from outright solicitation of their customers. *See also Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 277 (2016) ("The one canon of construction that precedes all others is that '[w]e presume that the legislature says what it means and means what it says.'" (alteration in original) (quoting *In re Woodley*, 290 Va. 482, 491 (2015))). In short, if the customer approaches the former employee with its business, the former employee is *not* restricted from accepting that customer's business—and doing work for that customer of the former employer.

This decision by the General Assembly is made even clearer when applying the *noscitur a sociis* canon.[6]  That canon "translates as 'it is known by its associates.'"  *Bd. of Supervisors of Fairfax Cnty. v. Leach-Lewis*, 303 Va. 225, 235 (2024).  It states that "when general and specific words are grouped, the general words are limited by the specific and will be construed to embrace only objects similar in nature to those things identified by the specific words."  *Wood by & Through Wood v. Henry Cnty. Pub. Sch.*, 255 Va. 85, 94-95 (1998) (quoting *Martin v. Commonwealth*, 224 Va. 298, 302 (1982)).  Applying the *noscitur a sociis* canon helps a court to determine "the meaning of doubtful words in a statute" because it holds that the meaning of those words "may be determined by reference to their association with related words and phrases."  *Loch Levan Land Ltd. P'ship v. Bd. of Supervisors*, 297 Va. 674, 685 (2019) (quoting *Andrews v. Ring*, 266 Va. 311, 319 (2003)).

As noted *supra*, Code § 40.1-28.7:8(A) defines a "covenant not to compete" as:

> "Covenant not to compete" means a covenant or agreement, including a provision of a contract of employment, between an employer and employee that restrains, prohibits, or otherwise restricts an individual's ability, following the termination of the individual's employment, to compete with his former employer. A "covenant not to compete" shall not restrict an employee from providing a service to a customer or client of the employer if the employee does not initiate contact with or solicit the customer or client.

Code § 40.1-28.7:8(A).

Here, the grouping of the more and less specific sentences in the "covenant not to compete" definition found in Code § 40.1-28.7:8(A) requires this Court to interpret the more general sentence (the first sentence) in light of the more specific sentence (the second sentence).

---

[6] This Court need not decide whether Code § 40.1-28.7:8 is ambiguous to apply the *expressio unius* canon or the *noscitur a sociis* canon.  *See Miller & Rhoads Bldg.*, 292 Va. at 541-44 (in which the Supreme Court applied *expressio unius* to the statute at issue in that case despite finding that the "statute is clear and unambiguous"); *Loch Levan Land Ltd. P'ship v. Bd. of Supervisors*, 297 Va. 674, 685-86 (2019).

*See Sainani v. Belmont Glen Homeowners Ass'n*, 297 Va. 714, 722, 724-25 (2019) (applying the *noscitur a sociis* canon to limit more general language in the nuisance section of an HOA's amended declaration in light of the more specific exterior-lighting restrictive covenant). In this case, the more specific sentence narrows the scope of the "covenant not to compete" definition by providing specifically when an employer would not be able to enforce a "covenant not to compete" against its former employees.[7] The second sentence of Code § 40.1-28.7:8(A) says that an employer cannot enter into a "covenant not to compete" with its employees that stops those employees from assisting a customer of the employer "*if the employee does not initiate contact with or solicit the customer or client*." Code § 40.1-28.7:8(A) (emphasis added). Thus, we conclude that an employer and an employee can enter into an agreement that stops those employees—once they leave their employer—from "initiat[ing] contact with or solicit[ing] the customer[s] or client[s]" of the employer. *See id.*[8]

Therefore, assuming for purposes of this interlocutory appeal that Barrera does qualify as a low-wage employee, we hold that Code § 40.1-28.7:8 does not prevent Sentry Force from barring Barrera—through the "Non-Disclosure and Restrictive Covenant Agreement" signed by

---

[7] Specifically, that would be when that "covenant not to compete" bars a former employee from assisting the clients or customers of their former employer after those clients seek out the former employee's services. Code § 40.1-28.7:8(A).

[8] In addition, this Court simply cannot accept Barrera's interpretation of Code § 40.1-28.7:8. If—as Barrera argues—the second sentence of the "covenant not to compete" definition is just a clarification of the first sentence, then the second sentence of Code § 40.1-28.7:8(A) would add no additional information. It would effectively repeat the first sentence of Code § 40.1-28.7:8(A). Barrera's reading would therefore make the second sentence completely superfluous and redundant, which would violate the well-established principle of statutory interpretation "that every act of the legislature should be read so as to give reasonable effect to every word" of a statute. *Cook*, 276 Va. at 483 (quoting *Conwell*, 227 Va. at 181). *See also Hubbard*, 255 Va. at 340-41 (explaining that it is a "settled principle of statutory construction that every part of a statute is presumed to have some effect" (citing *Absher*, 153 Va. at 335)).

Barrera when Barrera worked for Sentry Force—from actually soliciting Sentry Force's customers and clients once Barrera left Sentry Force.

B.  Code § 40.1-28.7:8 and the Prohibition Against Soliciting the Former Employer's Employees

Sentry Force also argues, "The Circuit Court erred in overruling Sentry Force's Plea in Bar to Mr. Barrera's Counterclaim because it misinterpreted and/or misapplied Va. Code § 40.1-28.7:8 and erroneously held that the Agreement's covenant prohibiting Mr. Barrera from directly soliciting Sentry Force's employees following the end of his employment is subject to the Statute."[9]

As explained *supra*, the second sentence of Code § 40.1-28.7:8(A) narrows the scope of the first sentence (which broadly bans a "covenant or agreement, including a provision of a contract of employment, between an employer and employee that restrains, prohibits, or otherwise restricts an individual's ability, following the termination of the individual's employment, to compete with his former employer").  Code § 40.1-28.7:8(A).  However, the second sentence of Code § 40.1-28.7:8(A) only narrows the scope of the first sentence in Code § 40.1-28.7:8(A) *as to customers or clients* of an employee's former employer—not as to that employee's former (and fellow) co-employees:

> A "covenant not to compete" shall not restrict an employee from providing a service to a *customer or client* of the employer if the employee does not initiate contact with or solicit the *customer or client*.

*Id.* (emphases added).  Thus, the second sentence of Code § 40.1-28.7:8(A) does not apply for purposes of this assignment of error because it only mentions customers or clients and does not

---

[9] None of the parties before this Court in this case argue that the Agreement signed by Barrera does not bar Barrera from soliciting Sentry Force's former employees or customers. Instead, Barrera and New District Security claim that while "the Agreement bars Mr. Barrera from hiring Sentry Force employees" or "soliciting its customers," it is "*per se* unenforceable and illegal as applied to" Barrera.

provide a separate exemption for employees. Accordingly, an agreement (1) between an employer and an employee that (2) bars that employee from soliciting the employer's other employees (3) after the employee no longer works for the employer clearly falls within the scope of the statute—and could not be enforced against Barrera and NDS. Such an agreement would be a "covenant" between "an employer and employee that restrains" that employee's ability "to compete with his former employer" after "the termination of the individual's employment." *Id.*

Therefore, to "interpret the several parts of" Code § 40.1-28.7:8 "as a consistent and harmonious whole"—which this Court must do according to binding Supreme Court caselaw[10]—we hold that the circuit court did not err when it ruled that Code § 40.1-28.7:8 prevents Sentry Force from enforcing a "covenant not to compete" agreement against Barrera that stops Barrera (after he left Sentry Force) from soliciting Sentry Force's other employees to come to work for him and NDS. *Wintergreen Homestead, LLC v. Pennington*, 76 Va. App. 69, 76 (2022) (quoting *Va. Elec. & Power Co. v. Bd. of Cnty. Supervisors*, 226 Va. 382, 387-88 (1983)).[11]

---

[10] The Supreme Court has often stated, "[S]tatutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great connected, homogenous system, or a single and complete statutory arrangement." *Blake v. Commonwealth*, 288 Va. 375, 383 (2014) (alteration in original) (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957)). Indeed, the Supreme Court has repeatedly instructed, "Words in a statute should be interpreted . . . to avoid rendering words superfluous." *Brown*, 284 Va. at 544 (alteration in original) (quoting *Cook v. Commonwealth*, 268 Va. 111, 114 (2004)). "[I]t is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal. A statute is not to be construed by singling out a particular phrase." *Jackson v. Jackson*, 298 Va. 132, 139 (2019) (quoting *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012)).

[11] On brief before this Court, Barrera's counsel claims that Barrera "is [e]ntitled to [r]ecover his [a]ttorney's [f]ees and [c]osts [i]ncurred in [o]pposing Sentry Force's [a]ppeal" under Code § 40.1-28.7:8(F), which states that when a court "finds a violation of the provisions of this section, the plaintiff shall be entitled to recover . . . attorney fees from the former employer or other person who attempts to enforce a covenant not to compete against such plaintiff." Code § 40.1-28.7:8(F). Because Barrera and NDS have succeeded on their second assignment of error, we remand this case so that the circuit court can award appropriate attorney fees and costs, as required by Code § 40.1-28.7:8, for an attempt to unlawfully enforce a

III. CONCLUSION

For all of the foregoing reasons, we reverse the decision of the circuit court on Sentry Force's first assignment of error in this interlocutory appeal. Simply put, assuming for the purposes of this interlocutory appeal that Barrera is a "low-wage employee," Code § 40.1-28.7:8 does not prevent Sentry Force from barring Barrera from soliciting Sentry Force's *customers and clients* after Barrera left Sentry Force. However, we affirm the circuit court's decision on Sentry Force's second assignment of error because Code § 40.1-28.7:8 *does* prevent Sentry Force from enforcing a "covenant not to compete" agreement against Barrera that stops Barrera (after he left Sentry Force) from soliciting Sentry Force's other *employees*. We accordingly remand for the circuit court to enter an order consistent with this opinion and to proceed further with the hearing of this case.

*Affirmed in part, reversed in part, and remanded.*

---

covenant not to approach the employees of his former employer with an offer to work for Barrera.